# Goforth v. The State.

## Murder.

(Decided June 30, 1913. 63 South. 8.)

1. *Evidence; Flight.*—In a criminal prosecution the state may always show flight of defendant, such as by showing that he absented himself from the community of the crime, as tending to show his sense of guilt, fear of arrest, or to avoid arrest.

2. *Same; Attending Circumstances.*—Where the state has offered evidence showing flight of defendant, either the state or defendant may show the circumstances attending it as shedding light on defendant's motive in leaving the community.

3. *Same.*—While a defendant cannot introduce self-serving declarations as to his connection with the crime for the purpose of showing his motive in leaving the community, he may show his act and words which are so connected with the flight as to give character to it.

· 4. *Same.*—Where the state has shown the flight of defendant, and facts and circumstances ·tending to show that he was trying to conceal his movements, it was competent for defendant to introduce the contents of two post cards written by him to his mother in which he stated where he was going and what he intended to do, although the cards were admitted for the purpose merely of showing that he had written to his mother.

5. *Witnesses; Impeachment.*—A letter written after the commission of the crime by a detective who arrested the defendant, to another witness in the case in which he stated that it was time for such witness to get busy, asked her if she knew anything of value, and told her to keep him posted, was admissible as tending to show the interest of the witness and the detective.

(McClellan, J., dissents.)

Appeal from Gadsden City Court.

Heard before Hon. J. A. Bilbro.

Wiley Goforth was convicted of murder, and he appeals. Reversed and remanded.

The letter referred to in the opinion was dated Birmingham, Ala., August 22, 1911, addressed to Mrs. Zella Cohelia, Altoona, Ala. Dear Friend: I am somewhat surprised at not seeing or hearing from you. I think it is time for you to get busy. You know I have told you how to do. What do you know, anything of value? Listen, keep me posted about everything, and when you are in Birmingham, be sure and come around and see me. I might be able to tell you something. Mr. Judge told me he had one letter from you and you had been sick. Let me hear from you real soon. Your very respectfully, Irby Zeigler." The bill of exceptions states that the letter was offered by the defendant as the letter testified to by the witness Zeigler as the letter he wrote to Zella Cohelia. It seems that Zeigler was a detective, and was present when witness Cohelia made a statement to the solicitor concerning the crime; also that Zeigler went to Arkansas, arrested the parties, and brought them back, and that he wrote the above letter after the killing.

CULLI & MARTIN, for appellant. Upon the question of interest or bias of the detective, the court erred in excluding the letter written by the detective to the witness Zella Cohelia.—*Ott v. State,* 160 Ala. 32; *Cross' Case,* 147 Ala. 130; *Martin v. State,* 104 Ala. 71; Jones on Evid. sec. 826. The state had introduced evidence tending to show flight of defendant, and defendant was entitled to any facts and circumstances connected therewith for the purpose of explaining his absence, and the postal cards written by him to his mother were admissible in evidence.—*Sylvester v. State,* 71 Ala. 18; *Carden v. State,* 84 Ala. 420; *Elmore v. State,* 98 Ala. 12; *White v. State,* 111 Ala. 97. Counsel discuss other matters connected with the trial that are not discussed

in the opinion, and it is therefore not deemed necessary to here set them out.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The conduct of defendant on or about the time of the homicide may be properly introduced in evidence.—*Raines v. State,* 88 Ala. 91; *Perry v. State,* 91 Ala. 83. Evidence of flight and the attendant circumstances is always admissible in a criminal case, and the court was not in error in any of its rulings thereon.—*Allen v. State,* 146 Ala. 61, and authorities cited in appellant's brief. Testimony that others were arrested for the crime was not admissible.—*Walker v. State,* 153 Ala. 31; *McDonald v. State,* 165 Ala. 85; *McGehee v. State,* 171 Ala. 19.

DE GRAFFENRIED, J.—In a criminal prosecution the state may always offer the *flight* of the defendant from the neighborhood of the crime as *some evidence*— a *circumstance*—tending to show the guilt of the defendant.

When a crime has been committed, and the state offers evidence tending to show that the defendant *absented* himself from the community in which the crime was committed, the *value* of this *fact of flight* depends entirely upon the *purpose* of the defendant in thus absenting himself from the community. The question as to *why* the defendant *left* the community and remained away from it becomes a question for the jury, and so, when the *state* offers the *fact* of the defendant's flight from the community in evidence, the law allows *both* the *state* and the *defendant* to show all those things which the defendant said and did *when he left,* and *while away* from the community, which tend to explain the quo animo of the *flight,* whether the absence of the

defendant was due to his *sense of guilt,* or his desire to
*avoid,* or *through fear of,* arrest, or on the other hand,
whether his absence was due to other causes.

The evidence which the defendant may offer on this
subject cannot be offered or received as self-serving dec-
larations tending to show that he had no connection
with the commission of the corpus delicti.   The evi-
dence which he may lawfully offer on this subject is
evidence *connected with his flight,* and explaining the
character of the flight.   In other words, when the state,
in a criminal case, offers evidence tending to show flight
on the part of the defendant, then the *acts and words* of
the defendant which are so connected with the flight
*as to give character to it,* and to really give color to it,
are *parts* of the res gestæ of the flight, and are admissi-
ble as such.   Flight, as used in this connection, means
that the defendant absented himself from the commu-
nity of the crime out of a sense of guilt, out of fear bf
or to avoid arrest, and any word or act of the defend-
ant while in flight—i. e., *while away from the commu-
nity of the crime*—tending to *explain the reason* for his
absence is admissible as a part of it.   Of course a de-
fendant, in such a case, cannot get before a court or
jury his declaration that he is not guilty of the crime,
or any other mere self-serving declaration tending to
show that he had no connection with the commission of
the corpus delicti, but he may show, as evidence tend-
ing to rebut the idea that his absence was in fact a
"fleeing from justice," such acts and declarations of his
while absent which may tend to show that his absence
from the community was due to an entirely different
cause.   In other words, when flight is offered as a cir-
cumstance tending to show the defendant's guilt, the
question *is at once at hand* as to whether, *during his
absence,* the defendant is to be regarded as having been

a *fugitive from justice,* or whether he is to be regarded as having been absent for an innocent and lawful purpose disassociated with any idea of the crime. In this connection the manner in which the defendant left the community—whether openly or secretly, whether in a usual or in an unusual manner, and whether at a usual or an unusual time—are all matters which may go before the jury as tending to illustrate the character of the flight. The manner in which the defendant traveled while en route to the point of his destination, whether openly or secretly, and whether in a usual or in an unusual way, are also matters for the consideration of the jury. The point to which the defendant went and the general character of his conduct while there before his arrest, whether usual or unusual, are also matters for the consideration of the jury.

A criminal may, of course, leave a community in an open and in an accustomed way; he may, while on his journey, conduct himself in the usual and accustomed way, and when he reaches the point of his destination he may remain in the open, do nothing to conceal his identity, conduct himself in the usual way, and openly keep those informed at the place of the crime of his whereabouts. But a fugitive from *justice does not usually behave in this manner* because such behavior usually defeats the object of the criminal in becoming a *fugitive from justice.* The criminal usually leaves a community secretly, conceals his identity while en route, and by changing his *name,* etc., conceals his identity when he reaches his destination, etc. It is for these indicated reasons that the law, *on the question as to whether a particular person was, at a particular period, a fugitive from justice,* permits the broad range to the testimony to which we have above alluded.

The general facts in the instant case strongly illustrate the proposition under discussion. Altoona is a small mining town. The defendant, who was, at the time to which we refer, 17 years of age, resided there with his parents. There was evidence tending to show that the defendant was a miner, and that, as the work in the mine at the named point was becoming nonremunerative, he and an adult acquaintance, Joe Salsbury, had, for some time, contemplated going to Spadra, Ark., where there was a mine, and where they could find remunerative work. The evidence shows that on the *night* of July 2, 1911, a man by the name of Nicholas Shintzen was murdered in Altoona, and the defendant and Joe Salsbury were indicted for the murder. There was a trial in which there was evidence tending to show that the defendant and said Joe Salsbury were guilty of the murder, and there was evidence tending to show that they were not guilty. For the purpose of *aiding* its evidence tending to show the defendant's guilt, the state was properly permitted to prove that at an early hour on the morning after the murder the defendant and said Joe Salsbury left Altoona; that they left on a train for Birmingham, Ala.; that they left the train at Birmingham at an *ususual* place, and *before* the train reached its *regular station* or stopping place at Birmingham; that one of said parties registered at a hotel in Birmingham under an *assumed* name, and that the other party *failed* to register at any hotel at Birmingham. The murder was committed for the purpose of robbery, and evidence was therefore properly admitted tending to show that these parties *gambled* and *spent* money in *bawdyhouses* while in Birmingham. Evidence was also properly admitted tending to show that these parties went from Birmingham, Ala., to Memphis,

Tenn.; that they bought tickets over a railroad to a *point* only a *part* of the way to Memphis, and that, from *that* point, they *beat* their way into Memphis by riding in a *box car* on a *freight* train. Evidence was also properly admitted tending to show that these parties went from Memphis to Little Rock, Ark.; that they beat their way from a point near Memphis to Little Rock by riding on the *top* of a *sleeping car;* and evidence was also properly admitted showing that the parties went from Little Rock to *Spadra,* and the *manner in which they went,* and that they were arrested at Spadra. The above *unusual things* which these parties did were admissible as evidence for the purpose of showing that they were *fugitives from justice,* for the purpose of showing the *character of their flight* from Altoona and as a part of the res gestæ of that flight. When, however, the defendant reached Memphis, Tenn., there was evidence tending to show that he wrote and mailed to his mother at Altoona the following open postal card:

"W. G.          Memphis, Tenn.          [Stamp.]
          Jul. 22, 10 P. M.   1911.
          Hello Mama I am in memphis now I am on my way to          Mrs. M. A. Goforth,
spada now. I will write again          Altoona,
when I get out there          Ala.
          yours          kidow"

There was evidence, also, tending to show that when the defendant reached Spadra, Ark., he wrote and mailed to his mother at Altoona the following other open postal card:

[Goforth v. The State.]

jul. 25, 1 P. M.  1911.

"Wiley     Spadra,                              [Stamp.]

Hello Mama how are you by
this time I am all ok say ma-        Mrs. M. A. Goforth,
ma we landed in Spadra sun-                     Altoona,
day evening I am going to                           Ala.
look for a job this morning
tell all the kids hello for me."

Giving the bill of exceptions an honest interpreta-
tion, we take it that the trial judge admitted the postal
cards in evidence for the purpose of showing that the
defendant wrote his mother when he reached Memphis,
and that he wrote to her when he reached Spadra, but
that he excluded from the jury the contents of the pos-
tal cards.  In the opinion of the writer the trial court,
in *this* ruling, committed reversible error.  While the
contents of the postal cards may have been intended by
the defendant for his mother *only,* nevertheless they
were *open.*  Regardless of the question as to whether
it would have been a violation by the postal authorities
of the laws or regulations of the post office department
to have read those postal cards or not, the postal cards
were open, and the defendant *must* have known, when
he mailed those postal cards, that they *could* be read
by any person in the employ of the United States gov-
ernment or by any other person into whose hands they
might fall before they reached his mother.  The defend-
ant knew that Altoona was a small town.  He probably
knew the postmaster, and if the state's theory is the
correct theory, he not only knew of the murder, but
was, when he left Alabama, when he reached Memphis,
and when he arrived at Spadra, and while at Spadra,
before arrest, *in flight* because of this crime—a fugitive
from justice.  The postal card from Memphis showed

with sufficient certainty the defendant's identity. It showed to any one who might read it that he was the son of Mrs. M. A. Goforth of Altoona, Ala. It showed that he was in Memphis on a certain date, and that he was on the way to Spadra. It told to the postmaster or clerk in the post office at Altoona exactly what it told the mother. The same is true with reference to the postal card from Spadra. Neither postal card by any word refers to the murder, and neither card contains any self-serving declaration on that subject. The card written from Memphis has some tendency to show that the defendant was not then undertaking to conceal his whereabouts, and also contained information as to where the defendant was going. The card from Spadra also has some tendency to show that the defendant was then making no effort at concealment, and also *why* the defendant went to Spadra. On the question as to whether the defendant was a fugitive from justice the contents of the postal cards should have been admitted. They had a tendency, the weight of which was for the jury, to give *quality* to the absence of the defendant from Altoona, and also had a tendency to show, the weight of which was also for the jury, that the absence of defendant from Altoona was due to his desire for work rather than his desire to evade arrest or to place himself, if his connection with the crime was detected, in a position to avoid arrest. In other words, the act of placing those open postal cards in the mails, when construed in the light of what was written upon them, places this pertinent question before the jury, viz., Is that act consistent with the theory that the defendant was then in flight because he had committed murder? In other words, would a fugitive from justice have so conducted himself? The mere fact that the defendant mailed postal cards to his mother without more can-

not shed that same light upon the *character* of the flight of the defendant as the postal cards, when read in the light of the messages upon them, which messages *do* have a tendency to show what the defendant was doing at the time they were mailed, and what he intended in the future to do. If those postal cards had told the mother an untruth about the defendant's whereabouts, they would have been admissible on the part of the state because they would have tended to support the state's theory that the defendant was a fugitive from justice. The fact that they *openly* told the truth has a tendency, on the other hand, to support the theory of the defendant, viz., that his absence from Altoona was not traceable, in any way, to the murder with which he was charged. They had *no tendency* to show that he was *not guilty of the murder,* but they did tend to show that his theory that he did not leave Altona because of the murder was the true theory. The state invited this character of testimony when it offered the defendant's flight as a circumstance tending to show his guilt, and, the state having opened the door, the trial court should have let the testimony in, and allowed the jury to say what weight it was entitled to when considered in connection with the subject for which it was only admissible, viz., the *quality* of the defendant's absence from Altoona. It was admissible for this purpose and for no other, but for this purpose it was relevant and material, and because of the court's refusal to admit this testimony this cause must be reversed.—*United States v. Candler* (D. C.) 65 Fed. 308; *Allen v. State,* 146 Ala. 61, 41 South. 624.

(2.) This case must again be tried, and it may be well for us to say that under some of the tendencies of the evidence in this case a majority of the members of this court are of opinion that the letter which was written

by Irby Zeigler to Zella Cohelia, and which was dated Birmingham, Ala., August 22, 1911, is relevant, and should be admitted in evidence upon the next trial of this case, provided the evidence on the next trial is substantially similar to the evidence which was had upon the trial which has resulted in this appeal. The letter has some tendency to illustrate the interest which the witnesses Zeigler and Cohelia have in this case.

3. It is the opinion of all the members of this court that the rulings of the trial court on all matters not above discussed were in accordance with the law.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur. McCLELLAN, J., dissents.