FREDERICK R. VAN VECHTEN, Respondent, *v.* AMERICAN EAGLE FIRE INSURANCE COMPANY, Appellant.

Insurance — motor vehicles — taking of automobile for temporary trip without consent of owner not a theft within meaning of policy insuring against " theft, robbery or pilferage."

The taking by the proprietor of a garage, on a trip for his own purposes, of an automobile left with him by the owner for repairs, but without intent to appropriate the same permanently and wholly, while larceny under the provisions of section 1293-a of the Penal Law as it read at the time, does not constitute a theft within the meaning of a policy of insurance covering against " theft, robbery or pilferage," and where the owner receives back his car, but in a damaged condition owing to an accident on the trip, he cannot recover on such a policy for his loss.

*Van Vechten* v. *American E. F. Ins. Co.*, 206 App. Div. 39, reversed.

(Argued December 11, 1924; decided January 21, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 9, 1923, affirming a judgment in favor of plaintiff entered upon a verdict.

*Edward M. Brown* for appellant. The words used in defendant's policy stating the perils insured against, to wit, " theft, robbery and pilferage," must be construed according to their ordinary use and meaning, and when so construed, they exclude that form of larceny attempted to be created and defined by section 1293-a of the Penal Law, as under that section a felonious intent is not one

of the elements of the crime. Defendant, therefore, is not liable to plaintiff upon the facts contained in this record. (*Marcus* v. *Fidelity & Deposit Co.*, 164 App. Div. 859; *Singleton* v. *Commonwealth*, 175 S. W. Rep. 372; *People* v. *Hope*, 83 N. Y. 426; *H. F. Ins. Co.* v. *Wimbush*, 12 Ga. App. 712; *Valley Mercantile Co.* v. *St. Paul F. & M. Ins. Co.*, 49 Mont. 430; *Stuht* v. *M. M. C. Ins. Co.*, 90 Wash. 756; *Ledwinka* v. *H. Ins. Co.*, A. L. R. 167; *Schmidt* v. *Heath*, 173 Ill. App. 649; *Bigus* v. *Pacific C. C. Co.*, 145 Mo. App. 170; *K. C. R. A. Co.* v. *Colony Ins. Co.*, 187 Mo. App. 514.).

*James C. Bronner* for respondent. The words used in defendant's policy, theft, robbery and pilferage, include the form of larceny created and defined by section 1293-a of the Penal Law. (Huddy on Automobiles, § 769; *Schumacher* v. *G. E. C. & I. Co.*, 197 N. Y. 58; *Thompson* v. *P. Ins. Co.*, 136 U. S. 287; *Callahan* v. *L. & L. Fire Ins. Co., Ltd.*, 98 Misc. Rep. 589; 179 App. Div. 890; *Clark & Neal Co.* v. *L. & L. & G. Ins. Co.*, 178 App. Div. 730; *Chepakoff* v. *Nat. B. F. Ins. Co.*, 97 Misc. Rep. 33; *People* v. *Fish*, 125 N. Y. 136; *Hass* v. *F. & D. Co.*, 97 Misc. Rep. 4.)

Cardozo, J. Defendant's policy of insurance covering plaintiff's automobile insures against stated perils, among them " theft, robbery or pilferage," with exceptions not now material.

Plaintiff left his automobile at a garage and repair shop with instructions to the proprietor to make specified repairs. The proprietor took the car on a trip for his own purposes, and on the homeward journey ran it against a pole. Plaintiff returning to the garage and receiving back his damaged car, makes claim against the insurance company that it reimburse him for his loss. The question is whether there was " theft " within the meaning of the policy.

By Penal Law, section 1293-a (as it stood when this

loss was suffered), "Any chauffeur or other person who without the consent of the owner, shall take, use, operate or remove, or cause to be taken, used, operated or removed from a garage, stable, or other building or place, * * * an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use or purpose, steals the same and is guilty of larceny and shall be punishable accordingly " (L. 1910, ch. 621). Apart from this statute, the misuse of plaintiff's car by the proprietor of the garage would not constitute a larceny, since there was lacking the felonious intent to appropriate another's property permanently and wholly (*Parr v. Loder*, 97 App. Div. 218, 220; *Ledvinka* v. *Home Ins. Co.*, 139 Md. 434; *Mich. Ins. Co.* v. *Wills*, 57 Ind. App. 256; *Phœnix Ins. Co.* v. *Epstein*, 73 Fla. 991; *Valley Mercantile Co.* v. *St. Paul F. & M. Ins. Co.*, 49 Mont. 430; *State* v. *South*, 28 N. J. L. 28; *Regina* v. *Trebilcock*, 7 Cox Cr. Cas. 408; Pollock & Wright on Possession, p. 225). Indeed, the very purpose of the statute was to bring within the definition acts outside of it before. The courts below have held that, however great the innovation, what is now larceny under the statute is also theft under the policy. We hold another view.

The problem before us is not one of statutory construction. It is one of the meaning of a contract. The Legislature may affix to new combinations of events the name of an old crime. The conclusion does not follow that the same word, and still less another word which once was an equivalent, must suffer a like extension in the thought of parties to a contract. The way is thus pointed to the decision of the case before us. " Theft," though often used as synonymous with " larceny," the proper term of art in the penal statutes of New York, is none the less a looser term, and one more colloquial or popular (*People ex rel. Jourdan* v. *Donohue*, 84 N. Y. 438, 442). Neither has a single meaning at all times and

in all contexts, nor is either always and in every setting the full equivalent of the other (cf. Holmes, J., in *Towne v. Eisner*, 245 U. S. 418, 424). Larceny, in our law of crimes, includes the offense of obtaining property by false pretenses (Penal Law, § 1290; *People* v. *Dumar*, 106 N. Y. 502; *People* v. *Miller*, 169 N. Y. 339, 351). If the plaintiff had sold his car on a credit fraudulently procured, he would be the victim of a larceny; yet manifestly the sale would not be theft under the provisions of this contract. Larceny under the statute was, therefore, something different from theft under the contract even before larceny had been extended to include misuse of motor vehicles. We have no reason to believe that the statutory definition, if inapplicable before, has become applicable now. On the other hand, we do not say that theft is to be limited to what was larceny at common law. We assume that larceny by a bailee or a fiduciary would be theft within the policy though at common law it would be classified under the heading of embezzlement (Pollock & Wright on Possession, pp. 134, 135, 157, 191). The distinction, now largely obsolete, did not ever correspond to any essential difference in the character of the acts or in their effect upon the victim. The crimes are one to-day in the common speech of men as they are in moral quality. When we have recourse to these standards for the solution of our problem, the conclusion is not doubtful. The very heading of the new statute, " unauthorized use of motor vehicles," prefigures an offense that is something less than theft as theft has commonly been known. We read on with a deepening impression of movement from the ancient moorings. Operation of a car without the consent of the owner will be a crime and larceny if it continues for a month or for a day, but so also will it be if it continues for an hour or even a few minutes. Innovations such as these may persist and become general. In course of time they may sink into common thought and common speech. They

have not done so yet. ✓ Theft under this contract is theft as common thought and common speech would now image and describe it.

One other consideration emphasizes the need for uniformity of meaning. The policy does not limit its protection to casualties suffered while the car is in New York. Theft, robbery and pilferage in any other State are equally within its terms. This without · more is sufficient to forbid a reading that would cause the risks to vary with the accidents of local laws. Neither insured nor insurer can have believed that the same act would be theft within the purview of the contract if committed in New York, and a mere trespass or conversion if committed in Massachusetts or New Jersey. They spoke in terms so common, so responsive to realities, as to have a meaning everywhere. By this they must abide.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, CRANE, · ANDREWS and LEHMAN, JJ., concur.

Judgments reversed, etc.