WALTER H. UNDERWOOD, Respondent, *v.* GLOBE INDEMNITY COMPANY, Appellant.

First Department, May 21, 1926.

Insurance — indemnity insurance — action on policy insuring against loss of bonds through negligence of employees while bonds are " in transit "— bonds were taken to supposed customer and delivered to him after receipt of check — certification on check was forged — bonds were not " in transit " when agent arrived with them at place of destination.

A policy of indemnity insurance covering loss of bonds through the negligence on the part of employees of the insured while the bonds are " in transit " does not cover a loss of bonds suffered by the plaintiff, where it appears that the bonds in question were taken by one of plaintiff's agents to a supposed customer and were delivered to the customer upon the receipt of a check which was apparently certified, although in fact the certification was a forgery and the bonds, therefore, were procured by the alleged supposed purchaser through fraud. At the time the bonds were delivered to the supposed purchaser, they were not " in transit " but had arrived at the point of destination. The policy in question does not cover any negligence of the employees of the plaintiff after the arrival of bonds at their final destination.

MERRELL, J., dissents.

APPEAL by the defendant, Globe Indemnity Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of November, 1925, upon the verdict of a jury.

*F. A. W. Ireland* of counsel, for the appellant.

*Martin B. Faris* of counsel [*Julian S. Eaton,* attorney], for the respondent.

McAVOY, J. Plaintiff recovered a verdict in this action on a bond of indemnity given by the defendant to the plaintiff. The judgment thereon is challenged as not founded upon the nomination in the bond.

The action was based upon a loss sustained by the plaintiff's assignor, for which the plaintiff claims that the defendant is liable under certain conditions of the indemnity bond. In the bond the defendant agreed to indemnify the insured " against any loss, to an amount not exceeding $50,000, of * * * bonds * * * (C) through robbery, hold-up or theft by any person whomsoever while the property is in transit within twenty miles of any of the offices covered hereunder, and in the custody of any * * * of the employees * * * or through negligence on the part of any such employee or messenger having custody of the property while in transit as aforesaid."

The sole question submitted to the jury at the trial was whether or not the bonds were lost while in transit within twenty miles of plaintiff's assignor's offices through negligence upon the part of any employee having custody of the property while in transit aforesaid. The manner of the loss of the bonds as alleged in the complaint and as given in evidence is found in the testimony of the witness ·Del Re, the custodian of the bonds. It follows: " Q. And where did you meet Dunn? A. Well, Mr. Dunn telephoned, and wanted to make an appointment to talk over some bonds. So I went up there about three days before I had delivered these particular Liberty Bonds, and talked with him about these bonds and some other bonds and a hundred shares of stock which he ·had approved of and would let me know when he wanted delivery · on them. So he told me to deliver the hundred shares of stock and the 2½ Liberty Bonds — I mean by 2½, two and one-half thousand — on that Saturday afternoon. Well, I couldn't deliver the hundred shares of stock, because it had to be put in his name after I received payment. I delivered the 2½ bonds to him on a Saturday afternoon, and promised to bring back a hundred shares of stock, that is, when it was registered in his name. I merely got the check from him, and merely glanced at it, and it looked like a certification to me, and gave him the bonds, gave him the 2½ bonds, and then I was to bring them downtown and wait for him, and then we were going over to look at some plant in Jersey, and I waited about twenty minutes in front of 347 Madison Avenue, and then decided that something was wrong, and called up the United States Mortgage & Trust Company; whereupon I learned that there was no account there by that name, and I immediately rushed up there, and found that there was nothing to it at all. It was just fake all the way through. Q. Were you instructed to get a certified check before delivering the bonds? A. Yes."

The check which was given had a stamp of certification by the trust company which the witness mentioned, but it had no signature whatever of any officer or cashier of that company, which it was testified to was the custom and usage in similar certifications. · The bonds apparently were lost, on this proof, directly through means of forgery, and while forgery was explicitly excluded under the wording of one of the conditions of the bond, unless such forgery were committed by collusion of an employee, nevertheless no point was made of this condition of the bond at the trial.

Since defendant did not move to dismiss on this count at trial, it waived that point, and we now consider whether there was a loss of the property while " in transit," because certainly the evidence would seem to have warranted a finding of negligence on the part

of the employee because of his failure to examine the nature of the certification at the time he turned over these bonds to this comparative stranger. He knew the necessity of certification in order to be sure of the validity of the check, the amount represented by it being in the bank, and the genuineness of the signature. But he neglected even to assure himself that the certification was signed. The learned trial court held as a matter of law that the bonds were in transit at the time of their arrival at the address where delivery was to be made.

We cannot conclude from the proof that the bonds can be said to have been in transit. After Del Re, the carrier of the securities, arrived at the house of Dunn on West End avenue, he testified that he they sat down at a table, and as his testimony shows, he then had the bonds in his coat pocket, and when Dunn handed him the check he passed the bonds over to Dunn and looked at the check. There was a delivery and a loss only after the property had arrived at its destination. While the phrase " in transit " may be considered as implying the whole journey from the place of origin to the place of destination and does not exclude incidental stops, yet in our view it cannot be considered to imply a continuance of motion after arrival at its final destination. The negligence of an employee which an indemnity company insures against while the employee is in transit would seem to be such negligence as a failure properly to guard securities or moneys while in his possession; negligence in the placing of them while still continuing the journey in some unsafe place where they could be lost or abstracted; negligence in exposing them to destruction or loss by placing them in a dangerous place where they could be destroyed by the elements or in some fortuitous manner.

In *Van Vechten* v. *American Eagle Fire Ins. Co.* (239 N. Y. 303) the words in a policy of indemnity are said to be used in such manner as " common thought and common speech would now image and describe it." " Transit " in common speech is the act or process of causing to pass from one place to another. Here the act of passing had totally ceased. The place of stoppage had been attained. There was no longer transit.

We think the judgment should be reversed and the complaint dismissed on the ground that transit did not continue after the goods arrived at their destination.

CLARKE, P. J., and FINCH, J., concur; MERRELL, J., dissents.

Judgment reversed, with costs, and complaint dismissed, with costs.