160 So. 897

## HOME INS. CO. OF NEW YORK v. TRAMMELL.

6 Div. 707.

Supreme Court of Alabama.

April 11, 1935.

J. S. Mead and Coleman, Spain, Stewart &
Davies, all of Birmingham, for appellant.

280

Harsh, Harsh & Hare, of Birmingham, for appellee.

BOULDIN, Justice.

The action is on a policy of automobile insurance, indemnifying the owner against loss from "theft, robbery and pilferage."

The owner, Ross Trammell, employed a negro youth, Alfred Murphy, to take the car to a water hydrant, a few hundred feet away, and wash and simonize it.

The key, together with rags and simonizing material, was handed to Murphy, who drove the car to the hydrant, and proceeded to wash and simonize it as agreed. He was in sight of the owner's place of business. An hour or two later Mr. Trammell found his car about a mile away, ditched and damaged, alongside the highway. It is without dispute that Murphy drove the car to that point, and accidently ditched it. The insured insists there was a "theft" of the car, a driving the car away with felonious intent to deprive the owner of his property. The insurer insists there was no such intent; that Murphy drove the car to this point on an errand to get more rags at his home, and a cleanser at a little store to remove some stain he had gotten on the windshield; that his attention being distracted by some one calling to him, he lost control and the car went off the embankment.

There is no occasion to discuss in detail the several circumstances in evidence tending to support the respective contentions of the parties.

Among the circumstances relied upon as tending to support the charge of theft, was evidence of flight on the part of Murphy. Opposed to this was evidence tending to show there was no flight from the neighborhood to avoid arrest, or from a sense of guilt, but a temporary evasion of Mr. Trammell, and his supposed wrath.

On this issue, and in explanation of flight, defendant offered to prove by Aaron Anderson, one of Murphy's neighbors and associates, that following the accident, Murphy started toward Mr. Trammell's place of business, when the mother of Aaron Anderson warned Murphy, saying: "Don't you go up there." That, thereupon, Murphy turned the other way and took steps to have Mr. Trammell notified. Murphy disappeared before Mr. Trammell arrived.

On objection by plaintiff the trial court sustained objection to the statement: "Don't you go up there." It appears the court treated this as hearsay and inadmissible. In this, there was error.

Explanation of flight is always admissible. This, by circumstances tending to show the alleged flight was not because of a sense of guilt, or fear of arrest. Any circumstance tending to show motive for the flight consistent with innocence is properly received. Among these circumstances is the advice of friends. 16 C. J. p. 553, § 1068; Goforth v. State, 183 Ala. 66, 63 So. 8.

Not intimating any views as to the weight of the testimony on the issue of "theft" vel non, we are impressed it was the right of defendant to have the benefit of this testimony to be considered by the jury along with all the testimony.

Appellee raises some question as to the manner in which the question arose in the court below. The witness, narrating the events following the ditching of the car, at first voluntarily stated, "and Mama said." At that point objection was interposed, and the witness said no more. But counsel proceeded to fully enlighten the court as to the proposed statement and the purpose for which it was being offered; and thereafter objection to same was sustained and an exception reserved. The question was properly presented for review here.

In this ruling there was error to reverse.

Argument is presented as to the coverage of this particular contract of indemnity·

insurance. The pertinent provisions in this regard are set out in the report of the case.

The insurer's counsel insist the contract, as written, discloses incompleteness, and should be read as including the "excepting" clause of paragraph G. This, because in the first statement of "Perils," it is declared to cover loss from "Theft, Robbery and Pilferage, as defined by Paragraph G, page 2."

The position is untenable. Clearly enough this form of policy is framed so as to be issued with either of two stipulations limiting or restricting the coverage imported by the words."Theft, Robbery and Pilferage."

The parenthetical clause in paragraph G determines which of these coverages shall govern. By the device of writing "void" in the [    ] in the "Restrictive Theft Clause," that clause is stricken out, and the "excepting" provisions of paragraph G are written in.

Conversely, if the "Restrictive Theft Clause" is not voided, the "excepting" clause is omitted. Such is the present contract.

The insurance is against perils of loss from "theft, robbery and pilferage," according to the natural and usual import of these terms, restricted to theft of the automobile as a whole, and not covering separate theft of tools, accessories, etc., as defined in the "Restrictive Theft Clause."

■ Appellee, on the other hand, argues that since the omitted provisions of paragraph G are listed as exceptions to coverage by "theft," etc., they are to be treated as within the coverage, just as if it were written "not excepting," etc.

We think this view also untenable. The insured, seeing this entire clause omitted from his contract, could not rely upon it for any purpose. He is not presumed to have looked to omitted provisions for the meaning of those written into it.

■ The trial court refused to defendant the following charge in writing: "9. The Court charges you, Gentlemen of the Jury, that if you are reasonably satisfied from all the evidence in this case that at the time Alfred Murphy came into possession of plaintiff's automobile, he had not formed an intent to steal the automobile but later after it had come into his possession, he then formed an intent to steal the automobile and did steal it, you cannot find your verdict for the plaintiff."

Such ruling might be held harmless because of given charge 8, of like import. But the question thus presented is argued on both sides, and is likely to arise on another trial.

The charge is based on the view that "theft" within the meaning of such policies is synonymous with "larceny" in its strict common-law sense. Thus viewed a bailee, having some present property right, is not guilty of larceny, in Alabama, unless he had the intent to steal at the time he obtained the possession. Fox v. State, 205 Ala. 74, 87 So. 623, and cases there cited.

■ However, it is also the law that a mere servant, or employee, in the possession of the property of the master, holds possession for and in the right of his master, or employer, and is guilty of larceny if he feloniously removes or runs it away with intent to permanently deprive the owner of his property. Crocheron v. State, 86 Ala. 64, 5 So. 649, 11 Am. St. Rep. 18.

We can discern no distinction in principle between a servant, temporarily employed to groom a horse for hire, and one employed to wash and polish a car.

■ "Larceny" is a technical term, while "theft" is one of common usage. It is widely and broadly stated the two are synonymous in construing insurance contracts of this character. Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A. L. R. 734; 5 Couch on Ins. 1176–a.

Our case, supra, involved a purchase of a car; the seller was induced to part with possession and title through fraudulent misrepresentation in the nature of false pretense. The case gives express recognition to the doctrine that such policies should be liberally construed in favor of the insured, but holds the case not one of "theft" within such contracts.

Eminent courts and text-writers, having in view the protection of the insured in cases of "theft" as used in common parlance, though not within the technical definition of larceny at common law, hold embezzlement of a chattel by a bailee within the protection of such policies.

Thus, in the leading case of Van Vechten v. American Eagle Fire Insurance Co., 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115, it was held a purchase through false pretense is not "theft" within the meaning of such contracts, although it is made statutory larceny in New York. In the same case, it is said:

" 'Theft,' though often used as synonymous with 'larceny,' the proper term of art in the

282

penal statutes of New York, is none the less a looser term, and one more colloquial or popular. * * *

"We assume that larceny by a bailee or a fiduciary would be theft within the policy, though at common law it would be classified under the heading of embezzlement. Pollock & Wright on Possession, pp. 134, 135, 157, 191. The distinction, now largely obsolete, did not ever correspond to any essential difference in the character of the acts or in their effect upon the victim. The crimes are one to-day in the common speech of men as they are in moral quality." 239 N. Y. 303, 306, 146 N. E. 432, 433, 38 A. L. R. page 1117.

We note the New York court draws a definite distinction between the instant case and our case of Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., supra.

Mr. Cooley approves the doctrine that embezzlement by a temporary bailee is covered by a "theft" policy. 6 Cooley's Briefs, p. 4991. Other authorities are: Fidelity-Phoenix Fire Ins. Co. of New York v. Oldsmobile Sales Co. (Tex. Civ. App.) 261 S. W. 492; Stewart v. Home Fire & Marine Ins. Co. of California, 124 A. 773, 2 N. J. Misc. 515; Federal Ins. Co. v. Hiter, 164 Ky. 743, L. R. A. 1915E, 575, 176 S. W. 210; Buxton v. International Indemnity Co., 47 Cal. App. 583, 191 P. 84, 20 N. C. C. A. 724.

We enter into no inquiry as to various forms of bailment, those covered by "theft" policies, and those covered by conversion and embezzlement policies.

But we do hold that if a temporary employee, or bailee to perform some service on or with the car, and return it, disappears with it, with intent to feloniously deprive the owner of the permanent ownership of his property, the loss is covered by the policy in suit.

Liability does not turn on proof of intent to steal at the time he received the car into his custody. We apprehend the man of intelligence, buying and receiving such a policy, would be much surprised if told that protection under his policy depended on the moment the intent to steal entered into the mind of the servant. To charge the insured with such intent in taking out a policy of this kind does not seem to give a liberal construction in his favor to accomplish the purposes in mind.

Charge No. 9 was, therefore, refused to defendant without error.

Clearly, under the great weight of authority, a temporary taking of the car for the use claimed by defendant, or for Murphy's own wrongful use, but with intent to return it, not an intent to permanently deprive the owner of his property, is not "theft" within this policy. That is the real issue of fact in this case. We now make no intimation as to the weight of the evidence on this issue.

For the error pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.