45 So.2d 324

**BANKERS FIRE & MARINE INS. CO. v. TERRY.**

**6 Div. 905.**

Court of Appeals of Alabama.
March 28, 1950.

Spain, Gillon, Grooms & Young and Ralph B. Tate, of Birmingham, for appellant.

Bumgardner, Saunders & Hawkins, of Bessemer, for appellee.

CARR, Judge.

This is a suit to recover on a policy of insurance wherein the defendant insured the plaintiff's automobile against loss or damage by theft, etc.

In the court below the judge, sitting without a jury, rendered judgment in favor of the insured.

The pertinent provisions of the policy are:

Under Coverage:

"D-1-Theft (Broad Form)

"Loss of or damage to the automobile caused by theft, larceny, robbery or pilferage."

Under Exclusions:

"(g) under coverages, A, D-1, and D-2 to loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance;"

Under Conditions:

"7. No Benefit to Bailee

"The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or bailee liable for loss to the automobile."

The only question involved on this review is whether or not there was a theft or larceny of the car within the coverage of the policy.

On Monday morning Mr. Terry, the appellee, took the insured automobile to Willie Jenkins' garage for repairs. The work was not completed on that day. According to the testimony of the appellant, Mr. Terry came and got his automobile Monday night and returned it to the garage on Tuesday morning. Mr. Terry testified that he did not do this.

On Tuesday afternoon Jenkins went on a trip out of town and left Willie Lee Gaines, an employee, in charge of his garage.

It appears that Jenkins operated a small automobile repair shop and there was no room inside the building for Mr. Terry's car. Both Gaines and Jenkins testified that parts from other cars had been stolen when left overnight outside the garage. The doors to Mr. Terry's car could not be locked.

After waiting until about 8:30 P.M. on Tuesday for Mr. Terry to come for his automobile, Gaines took it to his own home for safekeeping. After eating supper, Gaines and his wife used the car to go a distance of about two miles to look at a house which was for rent. On the return trip to their home, the car gave out of fuel. Gaines purchased sixty cents worth of gas from a nearby filling station and proceeded on his journey to his home. When he had traveled a short distance a Mr. East ran into the back of the automobile and damaged it.

The collision was investigated by a highway patrolman. The officer testified that Gaines told him that Mr. Terry owned the car. No arrests were made and no charges of any kind were preferred. Gaines took the automobile to his home where it remained the rest of the night. The next morning he carried it back to Jenkins' garage. Mr. Terry came to the place during the day and observed the damaged condition of his automobile.

With the exception of the slight, indicated conflict, the foregoing delineated evidence appears in the record without dispute.

In the case of Home Insurance Co. of New York v. Trammell, 230 Ala. 278, 160 So. 897, 898, the Supreme Court reviewed a case involving the indemnity of the owner of an automobile against loss from "theft, robbery or pilferage." Justice Bouldin, writing for the court, observed: " 'Larceny' is a technical term, while 'theft' is one of common usage. It is widely and broadly stated the two are synonymous in construing insurance contracts of this character." See also, Illinois Automobile Ins. Exch. v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; Hartford Fire Ins. Co. v. Wimbish, 12 Ga.App. 712, 78 S.E. 265.

Justice Bouldin went on to say: "Clearly, under the great weight of authority, a temporary taking of the car for the use claimed by defendant, or for Murphy's own wrongful use, but with intent to return it, not an intent to permanently deprive the owner of his property, is not 'theft' within this policy. That is the real issue of fact in this case. We now make no intimation as to the weight of the evidence on this issue."

After retrial below the case came to this court on appeal and is reported in 27 Ala. App. 476, 174 So. 536, 537. This court held: "In the instant case, the facts disclosed the taking and appropriation of the automobile, the facts as proven were such as to authorize the jury to *infer a felonious intent*." (Emphasis ours.)

A close study and analysis of the facts in the case will lead to the conclusion that there are some incriminating circumstances which form a legitimate basis for a fair inference of a felonious intent to steal the automobile. We find sound reason for the conclusions therein reached by this court.

The authority does not in any manner depart from the doctrine that before a recovery can be had on a policy of instant concern there must be a larceny of the car within the contemplation of our criminal law.

In his opinion Justice Bouldin cites and comments on the case of Van Vechten v. American Eagle Fire Ins., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115. In that case the New York Court of Appeals refused to make the provisions of a Penal Law the criteria of the word "theft" under the provisions of the policy. The statute in question provided: "Any chauffeur or other person who without the consent of the owner shall take, use, operate or remove, or cause to be taken, used, operated or removed from a garage, stable, or other building or place, * * * an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use or purpose, steals the same and is guilty of larceny and shall be punishable accordingly."

The New York court held: "Apart from this statute, the misuse of plaintiff's car by the proprietor of the garage would not constitute a larceny, since there was lacking the felonious intent to appropriate another's property permanently and wholly."

A recovery on the policy was denied on the basis of these facts: "Plaintiff left his automobile at a garage and repair shop with instructions to the proprietor to make specified repairs. The proprietor took the car on a trip for his own purposes, and on the homeward journey ran it against a pole. Plaintiff, returning to the garage and receiving back his damaged car, makes claim against the insurance company that it reimburse him for his loss."

It will be noted that the undisputed proof in the case at bar bears striking analogy to the above.

The case of Royal Ins. Co. v. Wm. Cameron & Co., Tex.Civ.App., 184 S.W.2d 936, involved the construction of policy provisions which are identical to those in the contract which is the basis of the case at bar. The opinion was handed down in 1945 by the Court of Civil Appeals of Texas. We will set out the evidence which appears in the body of the opinion: "The undisputed evidence showed and the trial court expressly found that on and prior to November 1, 1943, Graham Cole was engaged in the City of Waco in the business of operating a service station and storing automobiles for members of the public;

appellee was under a storage contract with Cole by the terms of which it regularly stored the automobile involved in this suit from month to month; J. B. Russell was an employee of Cole and was acting in the capacity as manager of the business so conducted by Cole; Tom Scott was also an employee of Cole and was subject to the supervision and direction of Russell; on November 1, 1943, appellee's vice president delivered the automobile to Russell at Cole's place of business under the storage contract with specific instructions to make certain minor repairs on the automobile or cause the same to be done and Russell agreed to do so; on the night of November 1, 1943, Russell and Scott used appellee's car in going to a dance several miles distant from Cole's place of business; and after the dance was over and while Russell was driving the automobile to his home at about 2:00 o'clock on the morning of November 2nd, he was involved in a collision in the City of Waco which resulted in the damage and loss complained of."

In response the court held: "The trial court did not expressly find that Russell or Scott took or used the automobile with the intention of depriving appellee of its value or of permanently appropriating the same to their use and benefit and we think it must be held as a matter of law that there was no evidence whatsoever of any such intention. On the contrary, all the evidence, direct and circumstantial, showed that it was the intention of Russell at all times to return the automobile to Cole's place of business on the morning of November 2nd in order that the same might be available to appellee upon demand. Hence, in the absence of any felonious intent to steal, we are of the opinion that the loss complained of was not caused by theft, larceny, robbery or pilferage within the meaning of the policy sued upon."

In the case of Home Ins. Co. v. Mathis, 109 Ind.App. 25, 32 N.E.2d 108, 111, the owner left the insured automobile at a public parking lot with the understanding that he would be out of town for about a week. At closing time an employee of the parking lot used the car to go to his brother's on a personal mission. On the return trip the automobile was damaged in a collision. On the basis of these facts the court held: "A felonious intent to steal may in some instances be inferred from the circumstances, but in the instant case there is no legitimate basis for such an inference."

In this opinion the Appellate Court of Indiana reviewed the authorities from several jurisdictions. We will not laden this opinion by a restatement of what there appears. By an examination of these cases it will be found that some of them bear facts which are in many respects similar to those in the case at bar.

We have not failed to take into account the rule which provides that where a cause is tried by the court without the intervention of a jury his finding must be given the effect of a verdict of a jury.

This doctrine is without application, however, when it appears that the trial judge takes an erroneous view of the law as applied to the presented facts. Fiquett v. Wade Electric Light & Power Co., 206 Ala. 630, 91 So. 357; Cox v. Somerville et al., 204 Ala. 261, 85 So. 525; Murphree v. Hanson et al., 197 Ala. 246, 72 So. 437; Alabama Dry Dock & Shipbuilding Co. v. Ward, 32 Ala.App. 535, 27 So.2d 710.

It is our considered conclusion that the evidence in the case of instant concern, in its most favorable light for the appellee, only establishes an unauthorized use of his car by Willie Lee Gaines. The undisputed proof does not afford any basis for a legitimate inference that there was any intent on the part of Gaines to steal the car, that is an intent to convert it to his own use or deprive the owner of its possession.

It is ordered that the judgment below be reversed and the cause remanded.

Reversed and remanded.