98 So.2d 1

The CHEMSTRAND CORP., and
J. B. Steen, Jr.

v.

The MARYLAND CASUALTY COMPANY.

8 Div. 815.

Supreme Court of Alabama.

May 9, 1957.

Rehearing Denied Nov. 21, 1957.

Peach, Caddell & Shanks, Decatur, for appellants.

**628**

Eyster & Eyster, Decatur, for appellee.

LIVINGSTON, Chief Justice.

Pursuant to an agreement with its employees whereby it undertook to pay the cost of their movement, including the cost of moving household goods and the insurance premium thereon, the Chemstrand Corporation, appellant, acting through its assistant treasurer, A. W. Lucas, procured a blanket transportation policy from the Maryland Casualty Company, appellee. This policy went into effect September 1, 1953.

In October 1953, J. B. Steen, Jr., appellant, and William C. Blackwood, employees of Chemstrand, arranged to have their household goods moved by Burnham's Van Service, from Martinsville, Virginia, to Pensacola, Florida. Burnham's Van Service was a public carrier of household goods, operating under ICC Certificate No. 682. Blackwood's goods were loaded first in a 28-foot van, and then Steen's. There was insufficient space inside the trailer for all of Steen's goods, so the rear doors of the trailer were closed, and the remainder of the load consisting of mattresses and box springs and nine compressed cardboard bar-

rels filled with Steen's household goods, and two empty barrels and some empty cartons belonging to Burnham were placed on the tail gate of the van, covered with a tarpaulin and secured to the van with ropes. While en route, at a point some twelve miles north of Monticello, Georgia, on Georgia State Highway No. 11, the iron ring on the right-hand side of the tail gate of the van broke, and the load which was being transported on the tail gate tilted from the van. The driver, one J. K. Fountain, did not notice the loss until he was some two miles west of Monticello. When he returned to the scene of the accident, he found some wrapping paper and the two empty barrels, but the goods, except for a single glass, had been taken from the point where they had fallen from the van. Fountain was able to recover a portion of the goods.

Burnham's Van Service was a self insurer of its losses of thirty cents per pound of released value on each shipment. When notified of the loss, Otis Burnham, a partner in Burnham's Van Service, and its Assistant General Manager settled with Steen for $360, of which $309 was for the loss of goods.

The appellee denied that the loss resulted from an insured risk. This cause was commenced in the Circuit Court of Morgan County, Alabama, to recover the actual cash value of the lost goods less the amount recovered from Burnham. Counts 1 and 2 of the complaint predicate liability upon the policy of insurance being an "all risk" policy. Count 3 predicates liability upon the loss being the result of an "overturning of vehicle," and Count 5 upon the loss being the result of "theft of the entire shipping package." ·

The trial court, at the request of the defendant, gave to the jury the following written charge:

"1. I charge you, gentlemen of the jury, if you believe the evidence in this cause, you will return a verdict in favor of the defendant."

The appellants assign as error the trial court's giving of the foregoing charge, and the refusal of a like charge to the appellant. Appellants also assign as error the sustaining of appellee's objections to questions propounded by the appellants on cross-examination of the witness, M. R. Rankin.

There was no error in the trial court's refusal to give the affirmative charge for the appellants.

The purpose of this policy of insurance which the appellant obtained from the appellee was to insure against damage, while in transit, the household goods and personal effects of Chemstrand's employees. The "overturning of vehicle" was one of the risks insured against, and as stated above, was made the basis of Count 3 of the complaint. For there to be an "overturning of vehicle," the vehicle must lose its equilibrium. Jack v. Standard Marine Ins. Co., 33 Wash.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426, Annotation, 8 A.L.R.2d 1433, 1436. It is immaterial whether there was a partial or a complete overturn of the vehicle. So long as the articles being transported were damaged as a result of the vehicle losing its equilibrium, this was damage caused by an insured risk. Carl Ingalls, Inc., v. Hartford Fire Ins. Co., 137 Cal.App. 741, 31 P.2d 414; Moore v. Western Assurance Co., 186 S.C. 260, 195 S.E. 558. There may be an overturn to the front or to the rear, as well as to either side. Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519. A tail gate is not in and of itself a vehicle, but a part of a vehicle. In the present cause, there was no evidence showing that the vehicle (the van) lost its equilibrium, and this accident was not covered by this clause of the policy. In Orlando v. Manhattan Fire & Marine Ins. Co., 266 App.Div. 319, 320, 321, 42 N.Y.S.2d 228, 229 (appeal granted and reargument denied 266 App.Div. 955, 44 N.Y.S.2d 676, affirmed 293 N.Y. 907, 60 N.E.2d 34), it was stated:

"At the time that the shovel was damaged it was being transported from

the District of Columbia to an airport in the State of Maryland. It was being moved on a platform trailer consisting of a wooden platform mounted and suspended on a wheel carriage. The width of the trailer was eight feet. It was equipped with a flap on either side of the platform which when opened increased the width of the platform to ten feet, and four inches in width. The shovel was being supported by the platform and flaps. During the course of transportation, the flap on the right side broke, causing the shovel, which was in part resting on said flap, to tilt and slip and fall from the trailer to the ground. The precise question presented is whether such occurrence was an 'overturning of conveyances' within the meaning of the policy.

"It is our view that there was no overturning of the conveyance (the trailer) merely because the flap or added width to the platform broke off on one side, even assuming that the flap was part of the platform and the material of which this flap was constructed did overturn as it fell to the ground. The equilibrium of the conveyance (the trailer) was not disturbed in any way so that it could not be said to have overturned, the accident being due solely to the collapse or breakdown of the flap on the edge of the trailer."

The trial court erred in giving Charge 1, set out above, for the defendant.

One coverage of the suit policy was:

"(c) Against theft of an entire shipping package only, but does not include pilferage."

Count 5 of the complaint is founded on this provision of the policy of insurance.

■ It has been broadly stated that "theft" as used in an insurance policy is synonymous with "larceny." Illinois Automobile Ins. Exchange v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L. R. 734. Larceny may be committed on a public highway. Griggs v. State, 58 Ala. 425. For an act to constitute "theft" or "larceny," the taking must be made with the felonious intent on the part of the taker to deprive the owner of the property. Home Ins. Co. of New York v. Trammell, 230 Ala. 278, 160 So. 897; Bankers Fire & Marine Ins. Co. v. Terry, 35 Ala.App. 233, 45 So.2d 324. In determining whether the acquisition of *found* goods constitutes larceny, it is important to ascertain whether the finder knew, or had means of knowing, or endeavored to discover the owner; whether he concealed or made known his acquisition; and how he conducted himself with the goods in general. Griggs v. State, supra. Whether or not the requisite intent existed is a question of fact for the jury, and the burden is on the insured to establish the existence of the taker's criminal intent, not beyond a reasonable doubt, but only by a preponderance of the evidence. Home Ins. Co. v. Trammell, 27 Ala.App. 476, 174 So. 536; Gibson v. St. Paul F. & M. Ins. Co., 117 W.Va. 156, 184 S.E. 562, Annotation, 48 A.L.R.2d 8, 50, 51.

■ There was sufficient evidence to go to the jury on the question of whether there had been a theft of the goods in question. The evidence shows that the load that fell from the tail gate of the van consisted of nine barrels filled with household goods, mattress, box springs, two empty barrels, brooms, dollies and packing material. That after discovering the loss and while retracing his route, said J. K. Fountain first stopped and talked to the driver of a flatbed truck; that after this, he stopped an Oldsmobile by blocking the road with his van, and found a portion of the load in this automobile; that he was later able to recover this part of the load by going to the home of the driver; that upon reaching the scene of the accident approximately an hour after the load had tilted from the tail gate, he found paper similar to the kind used in wrapping the articles that were packed in the barrels and the two empty barrels; that the only other articles that he found were one glass at the scene of the accident

which broke when the van he was driving ran over it, and a dish which a lady had who lived across the highway from the scene of the accident; that he reported the loss to the Georgia Highway Patrol and to the police and sheriffs at surrounding towns; that he remained in the vicinity for two days and contacted some fifty people in an attempt to recover the goods; that the van had signs thereon displaying its ownership and the nature of its business; that said Fountain notified his employer at Columbus, Georgia, who within a week or ten days' time notified the Federal Bureau of Investigation and the Georgia Bureau of Investigation; that the remainder of the goods were never recovered.

■ Pilferage, as used in insurance policies such as the one in question in this cause, is the abstraction of a part of the contents of a shipping package. Goldman v. Insurance Co. of North America, 194 App.Div. 266, 185 N.Y.S. 210; Tamarin v. Ins. Co. of North America, 68 Pa.Super. 614. The undisputed evidence shows that this exception from liability ("but does not include pilferage") does not apply in this cause, since the entire shipping packages, not just a part of the contents thereof, were taken.

■ The removal of the goods from the highway was the proximate cause of their loss. Recovery is allowed where an insured risk is the last step in the chain of causation set in motion by an uninsured peril. St. Paul Fire & Marine Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018; Howard Fire Ins. Co. v. Norwich & New York Transportation Co., 12 Wall. 194, 20 L.Ed. 378; 5 Appleman, Insurance Law and Practice, § 3083, p. 220; 29 Am.Jur. 689. Therefore, it is immaterial whether or not the breaking of the ring holding the tail gate was an insured risk. Though it placed the goods in a position of peril, the loss of the goods was occasioned by their removal from the place of the accident; and whether or not this removal was "theft" is a question of fact for the jury. The trial court was in error in not submitting Count 5 to the jury.

A provision in the policy provides:

"This insurance covers only while the property insured is in the custody of:

\*   \*   \*   \*   \*   \*

"c) Public truckmen, transfer and/or other transportation companies,  \*  \*."

It is evident from the policy as a whole that this provision was not inserted in the policy to except from liability an incident such as occurred in this cause, but rather to designate the methods by which the insured goods could be transported. This is strengthened by the insertion of the last clause under this provision in this policy:

"This insurance attaches from the time the goods leave factory, store or warehouse at initial point of shipment, and covers thereafter continuously in due course of transportation, until same are delivered at store or warehouse at destination."

The appellants further argue that there was sufficient evidence for this cause to go to the jury under Counts 1 and 2. These two counts are almost identical, and allege that the policy is an all-risk policy, and depend for their success on there being an ambiguity in the policy. The policy of insurance in this cause consists of three component parts: (1) Transportation Policy, Form 40005, (2) Transportation Form 40010, and (3) Inland Marine Endorsement, IM 2020. Form 40005 is not pertinent in this cause. Transportation Form 40010 provides, in part, as follows:

"This Policy Insures

"Within the Foregoing Provisions, and Except As Hereinafter Provided, Property

"a) While on land against direct loss or damage caused by fire, lightning (meaning thereby the commonly accepted use of the term lightning), cyclone, tornado, flood (meaning thereby

the rising of navigable waters), collision (the coming together of cars during coupling not to be deemed a collision), derailment, overturning of vehicle;

"b) While waterborne, against direct loss or damage caused by fire and perils of the sea, including general average and/or salvage charges and expenses, but free of particular average unless· amounting to three percent (3%) of the value of each case or package;

"c) Against theft of an entire shipping package only, but does not include pilferage."

The Inland Marine Endorsement, IM 2020, which is typewritten, provides:

"The Van Line or the carrier that is transferring the property insured under this policy is providing insurance in accordance with standard B/L for an amount not exceeding 30¢ per pound of the contents and property transported and, in consideration of the rate at which this policy is issued it is understood and agreed that any insurance under this policy shall not attach until the applicable amount of the insurance carried by the van line or trucking company is exhausted. It being the intent of this policy to cover the Chemstrand Corporation for the benefit of its employees and·officers for the amount of loss or damage sustained in excess of the carriers insurance of 30¢ per pound and in no event to exceed the actual cash value, subject to the deduction as set out above, nor the amount of liability set forth hereunder."

The appellants contend that there is an irreconcilable conflict between the above provisions which create an ambiguity open to explanation by parol testimony. We cannot agree that these provisions make the policy ambiguous. Provisions in policies of insurance which clearly disclose the parties' real intent are not to be given a strained construction to raise doubts where none reasonably exist. McDowell v. United States Fidelity & Guaranty Co., 260 Ala. 412, 71 So.2d 64; Aetna Casualty & Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425. And if the contract of insurance in its terms is plain, certain, and free from ambiguity, there is no room for construction, and it is the duty of the court to enforce it as written. Loveman, Joseph & Loeb v. New Amsterdam Casualty Co., 233 Ala. 518, 173 So. 7. Therefore, it is not necessary to consider the remaining assignments of error relating to the sustaining of appellee's objections to questions propounded by the appellants on cross-examination of the witness, M. R. Rankin. The testimony sought to be elicited from this witness concerned the parties' intention in regard to the risks covered by this policy.

The judgment of the lower court is reversed and the cause remanded.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.