**HARDINGER TRANSFER COMPANY, INC., Appellant,**

v.

**FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY.**

No. 78–2538.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 13, 1979.

Decided Aug. 22, 1979.

As Amended Sept. 24, 1979.

---

Wallace J. Knox, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for appellant.

Jerome W. Kiger, Grogan, Graffam, McGinley & Solomon, Pittsburgh, Pa., for appellee.

Before ADAMS, ROSENN and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

In this diversity case, a trucking company sued its insurance carrier to recover for damage to equipment it was transporting. The damage occurred when the equipment slid off the flatbed of a truck as a result of an incline in the road. The district court concluded that the damage was not within the risks covered by plaintiff's insurance policy because the damage resulted from insufficient lashing of the equipment rather than from an "overturn" within the meaning of the applicable clause in the policy.[1] The district court also interpreted an overturn to require that the wheels of the conveyance leave the surface of the road. We affirm solely on the causation ground.

On December 6, 1974, Hardinger Transfer Co. ("Hardinger"), through its employee William Schaal, Jr., was hauling an electric transformer and an engine block from Codan Corporation to the General Electric plant in Erie, Pennsylvania on a flatbed trailer. Both items were secured to the trailer with chains, one chain being used to fasten the engine block and several to secure the transformer. The transformer, a top-heavy piece of equipment, weighed 36,-000 pounds, and the engine block weighed approximately 12,000 pounds. As the driver of the Hardinger truck applied the brakes in order to stop for a traffic light, he could "feel" the engine block slipping off the trailer. The road sloped approximately 10° to the right and the weight of the engine block as it slid off the truck caused a further tilting to the right of the flatbed on its suspension system. The transformer, its chains having broken, then fell from the trailer and was damaged.

The case was tried under Pennsylvania law, and neither party questions the applicability of that law to this controversy. The district court, sitting without a jury, made the following findings: that General Electric's request for the electric transformer came late in the day and delivery "was a rather hurry-up job"; that the flatbed "was covered with snow and probably ice"; that the engine block was held by only one chain, "there being no other chains available"; that the movement of the engine block precipitated the movement of the transformer; that there was no evidence that the wheels of the trailer left the surface of the roadway; and that there was no loss of equilibrium of the vehicle. The court found that the cause of damage was the "insufficient lashing of the two pieces of equipment on the flatbed trailer." This finding, regardless of the definition of an overturn, was sufficient to deny recovery by Hardinger.

Although there is no Pennsylvania case construing an overturn clause, the district

---

1. The policy specifically covered loss from any damage to property "caused by or resulting from . . . [o]verturn of the conveyance. . . ."

court in its opinion expressed the view, derived from a case in another jurisdiction,[2] that recovery premised on an overturn of the conveyance requires that the wheels actually leave the surface of the roadway.

In view of the district court's finding on causation, which is amply supported by the evidence, it is unnecessary for us to rule on the district court's interpretation of Pennsylvania law on the overturn clause. We are all the more reluctant to do so because any conclusion we would make would be only a prediction of how a Pennsylvania court would rule on what is an issue of first impression within that jurisdiction.[3]

The judgment of the district court will be affirmed insofar as it denies recovery from Fireman's Insurance Company because the accident was by the inadequate securing of the equipment by Hardinger.

**2.** *See Chemstrand v. Maryland Casualty*, 266 Ala. 626, 98 So.2d 1, 3, (1957) ("So long as the articles being transported were damaged as a result of the vehicle losing its equilibrium, this was damage caused by an insurable risk."). After quoting *Chemstrand*, the trial court here interpreted "loss of equilibrium" to mean that the wheels of the conveyance must leave the surface of the roadway. No evidence was submitted to suggest that the wheels of the Hardinger trailer left the road at the time the transformer was being dislodged, and the trial judge therefore determined that no overturn of the vehicle had occurred.

**3.** We do, however, have reason to question the district court's conclusion on this issue in view of the inclination of Pennsylvania courts toward more flexible standards of recovery. In construing an ambiguous phrase in an insurance contract, the Pennsylvania Supreme Court recently reaffirmed its traditional rule that "[c]ourts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer." *Collister v. Nationwide Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1354 (1978); *see Mohn v. American Cas. Co.*, 458 Pa. 576, 326 A.2d 346 (1974); *Penn-Air, Inc. v. Indemnity Ins. Co.*, 439 Pa. 511, 269 A.2d 19 (1970); *Hughes v. Central Accident Ins. Co.*, 222 Pa. 462, 71 A.2d 923 (1909).