CHICAGO—FIRST DISTRICT—MAY, 1921.       75

Miller v. Phoenix Assurance Co. of London, 221 Ill. App. 75.

## G. M. Miller, Appellee, v. Phoenix Assurance Company of London, Appellant.

### Gen. No. 25,920.

INSURANCE—*necessity for intent to steal to place taking of automobile within theft policy.* A policy insured against loss or damage to an automobile by "Theft, robbery or pilferage." The car was kept in a public garage, and an employee of such garage took it without the consent of the owner and drove it for pleasure with some friends and on the way back ran into a pile of stone, damaged the car and then abandoned it. *Held*, that no recovery could be had on the policy since there could be no "Theft, robbery or pilferage" without an intent to deprive the owner permanently of the car, which intent did not appear.

Appeal from the County Court of Cook county; the Hon. J. H. RAGSDALE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1920. Reversed with finding of facts. Opinion filed May 3, 1921.

SEYMOUR EDGERTON, for appellant.

ROBERT F. KOLB, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff sued defendant in the county court of Cook county to recover damages under an automobile insurance policy. The cause was tried before a jury. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant requested the court to instruct the jury to find a verdict for it, but both motions were refused, and the jury returned a verdict finding the issues for plaintiff and assessing his damages at the sum of $350. Judgment was entered upon the verdict and defendant appealed.

The policy sued upon is what is known as the "Fire, Theft and Transportation Form No. 1." Plaintiff claimed that the damages suffered by him were re-

76    Appellate Courts of Illinois.

Miller v. Phoenix Assurance Co. of London, 221 Ill. App. 75.

coverable under the "theft" clause of the policy which insured him against loss or damage to the automobile described in the policy, in a sum not exceeding $500, from noon March 17, 1918 to noon March 17, 1919, by

"Theft, robbery or pilferage, excepting by any person or persons in the Assured's household or in the Assured's service or employment whether the theft, robbery or pilferage occur during the hours of such service or employment or not, * * * and excepting in any case other than in case of total loss of the automobile described herein, the theft, robbery or pilferage of tools and repair equipment."

The main question is whether the damage to plaintiff's automobile was the result of "theft, robbery or pilferage," within the meaning of said clause. All other clauses and conditions of the policy may be disregarded as defendant concedes that the accident happened on March 26, 1918, that the automobile was damaged, and that notice and proof of damage were duly made.

The policy was introduced in evidence and plaintiff was the sole witness in his behalf. He testified, in substance, that he was a dentist and had his office at No. 350 West Harrison street, Oak Park, Illinois, and also resided in Oak Park; that he was the owner of the automobile in question and kept it at Olcese's garage, at Madison street and Oak Park place in Oak Park, about half a mile from his office and about a mile from his residence; that when he wished to use the automobile he would telephone the garage and the automobile would be sent to him; that when he was through with it he would drive it to the garage and Olcese, the proprietor, or some employee of the garage, would convey him home in the automobile or some other; that on the evening of March 25, 1918, about 11 o'clock, he left the automobile in the driveway at the garage; that Olcese and William E. Thompson, employed as night man at the garage, were there at the time; that Olcese

Miller v. Phoenix Assurance Co. of London, 221 Ill. App. 75.

drove him home in another automobile; that shortly before noon the next day he was notified by the police that his automobile had been found at Latrobe and Madison streets, between two and three miles from Olcese's garage, in a damaged condition; that he went there and when he arrived the automobile was just being towed away; that it evidently had collided with a sand pile and had turned over; that it was so badly damaged that it could not be run; that when he left it at the garage the evening before it was in good condition, and his overcoat and certain tools were in the car, but these were not in the car when it was returned to the garage; that he had the automobile repaired at the cost of $400; that he had been paid $50 on account for the damage to the same by said William E. Thompson; that the automobile was not taken away from the garage, after he left it there on the evening of March 25, with his consent; and that it was not taken away by anyone in his household, service or employment.

On behalf of defendant two witnesses testified—said William E. Thompson and James Zaferis, the proprietor of a restaurant in Oak Park. It appears from the testimony of the former that he roomed in Oak Park on Euclid avenue and had been working in Olcese's garage for a period of about eight months as night man; that he knew plaintiff and had frequently driven him home in an automobile; that shortly after midnight on the night in question, after he had closed the garage for the night, he took plaintiff's automobile and went to Zaferis' restaurant about half a mile from the garage, there had a lunch, told Zaferis he was going "down town," invited him to go along, and the two, in plaintiff's automobile went south to 12th street, stopping at two saloons on the way where they had several drinks; that they then drove east on 12th street to Wabash avenue, picking up two women and a man on the way; that all then got out of the automobile and went in a restaurant; that subsequently Thompson

78    Appellate Courts of Illinois.

Miller v. Phoenix Assurance Co. of London, 221 Ill. App. 75.

and Zaferis got into the automobile again, drove south on Michigan avenue and stopped at 22nd street and Wabash avenue where Thompson talked to a friend; that they then started to return to Oak Park, drove north on Michigan avenue and then west on Madison street; that while Thompson was driving the automobile at a rapid rate of speed west on Madison street, near Latrobe street, about a mile and one-half east of the garage, he ran into a pile of crushed stone and the automobile was badly damaged; that Thompson did not' advise plaintiff of the accident, but went to his home and went to bed and did not get up until about 5 o'clock the following afternoon, when he telephoned to the garage that he would be there, as usual, at 6 o'clock p. m.; and that while preparing to go to the garage the police came and arrested him. Zaferis gave substantially the same account as to the ride and the accident.

"An essential element in the crime of larceny is that the thief should have the felonious intent, the intent to steal or *animus furandi*, that is, the intent to deprive the owner feloniously and permanently of his property, at the time of the taking of possession." (25 Cyc. 45.) "Where one without permission borrows goods of another intending and having the power to restore or replace them, the taking, although wrongful, does not constitute larceny." (25 Cyc. 49.)

In the case of *Valley Mercantile Co. v. St. Paul Fire & Marine Ins. Co.,* 49 Mont. 430, it appeared that, while a policy insuring the owners of an automobile against loss by theft was in force, said owners had placed the automobile in a paint shop to be repainted and while there it was without said owner's consent taken out by two employees of the shop, LeVasseur and Ellis, and driven, as LeVasseur testified, on a "joy-ride," during which an accident occurred causing

considerable damage to the automobile. The owners brought suit on the policy against the insurance company. The evidence did not disclose that said employees intended to steal the automobile or to permanently deprive the owners of their property. The trial court refused to direct a verdict for the defendant and the jury assessed plaintiff's damages at the sum of $400, upon which verdict the court entered judgment against the defendant. On appeal the Supreme Court of Montana reversed the judgment, saying (p. 433):

"It is earnestly contended by counsel for respondents, that, the taking being admitted, the question of the intent with which the car was taken was one for the jury's determination; and this is true, provided there is direct evidence of such intention or facts and circumstances from which such intention can be inferred. The only direct evidence of intention is that given by LeVasseur above. Since this is a civil action, plaintiffs were required to prove their case only by a preponderance of the evidence, but to recover at all they had the burden of proving every element of the crime of larceny.* * * The fact that the taking was altogether wrongful and that it was the intention of LeVasseur and Ellis to appropriate the car to their own use during the ride and to that extent to deprive the owners of the use of their property, are not sufficient to constitute their acts larceny. They must have had a criminal intent—the intention to steal the car, without which the act of taking, however, reprehensible and wrongful, amounted only to a trespass or a civil wrong. * * * To constitute the crime of larceny, the intent which accompanies the act of taking must be the criminal intent to deprive the owner of his property, not temporarily, but permanently."

In the case of *Hartford Fire Ins. Co. v. Wimbish,* 12 Ga. App. 712, 78 S. E. 265, it appeared that the owner of an automobile employed one Harris to clean out the muffler; that at this time said owner held a policy of insurance on the automobile insuring him against loss or damage by "theft, robbery or pilferage

by persons other than those in the employment, service or household of the insured''; that when Harris had finished the job for which he was employed he took the automobile without the owner's knowledge or consent, drove it out into the country, ran it into a tree, wrecked it and afterwards abandoned it; that at the time of the accident Harris was under the influence of liquor, had three companions with him in the automobile and was headed towards the city from whence he had come; that the owner brought suit on the policy; and that the trial resulted in a verdict and judgment in his favor. In reversing the judgment the Georgia Appellate Court said (p. 266):

"It is argued that the word 'theft,' as used in this policy, means any unlawful taking; that is to say, a taking without the consent of the owner. But in our law the word 'theft' has a well-defined meaning. Theft is synonymous with larceny. It is merely a popular name for larceny. * * * 'Robbery,' of course, has a well-defined technical meaning, and when used denotes a crime containing all the elements of that offense. The word 'pilfer' means to steal, and to charge another with 'pilferage' is the same thing as to charge him with stealing. * * * 'Pilferage' is but petty larceny. One cannot be convicted of either theft, robbery or pilferage unless he had the intent to steal. And we know of no authority for giving any different meaning to these words in a contract of insurance wherein it is stipulated that the company will be liable for loss or damage to an automobile, resulting from theft, robbery or pilferage. * * * It must appear that the person taking the machine intended to steal it. If he had the *animus revertendi* he is not guilty of theft, or robbery, or pilferage, even though he took the machine without the owner's consent.''

The decision in the *Wimbish* case, *supra,* has been cited with approval in the following cases where suits were brought on similar automobile policies: *Michigan Commercial Ins. Co. v. Wills,* 57 Ind. App. 256;

*Felgar v. Home Ins. Co.*, 207 Ill. App. 492: *Stuht v. Maryland Motor Car Ins. Co.*, 90 Wash. 576; *Phoenix Assur. Co. v. Eppstein*, 73 Fla. 991, 75 So. 537.

Under the facts and circumstances disclosed in the present case we are of the opinion that the evidence did not show that Thompson, when he took the automobile without plaintiff's consent, took it with the intention of stealing it and of depriving plaintiff of it permanently, and that plaintiff was not entitled to recover anything from defendant on the policy sued upon, and that the judgment of the county court should be reversed.

*Reversed with finding of facts.*

BARNES, P. J., and MATCHETT, J., concur.

Finding of facts. We find as ultimate facts in this case when Thompson took the automobile in question he did not take it with the intention of stealing it and of depriving plaintiff permanently of its possession, but that on the contrary he had the intention of returning it to the possession of plaintiff.