PAUL REPP v. AMERICAN FARMERS MUTUAL AUTOMOBILE
INSURANCE COMPANY.[1]

January 10, 1930.

No. 27,566.

*Moonan & Moonan,* for appellant.
*Lucius A. Smith* and *Sullivan, Neumeier & Nolan,* for respondent.

DIBELL, J.

Action to recover on a policy insuring plaintiff's automobile
among other things against "theft, robbery or pilferage." There
was a verdict for the plaintiff for $450. The defendant's motion
for judgment notwithstanding the verdict was granted, and from
the judgment entered the plaintiff appeals. The only question is
whether the auto was stolen within the meaning of the words "theft,
robbery or pilferage" used in the policy.

Paul Repp, the plaintiff, a man of 30, was the owner of the auto
which he had purchased about June 1, 1927, and for which he ob-
tained a policy of insurance on August 18, 1927. He claims that
it was stolen by Joseph Garvin, William Zika, Alfred Hannagan

[1]Reported in 228 N. W. 605.

and Uria Whipps on August 28, 1927, from in front of a hotel in the village of Le Sueur Center.

Repp lived five miles south of Le Sueur Center. On Sunday, August 28, 1927, about noon, he drove his auto to town. He met Zika, and it was suggested that they go to a ball game at New Prague. The three others named joined. They all lived at Le Sueur Center and were old acquaintances. At two o'clock they started for Montgomery, Repp driving. They drank at Le Sueur Center and again at Montgomery. At the latter place two young women joined them. This was satisfactory to all. When they reached New Prague they found that there was no ball game. They then started for Le Sueur Center, making a couple of stops on the way, and drinking. At Le Sueur Center Repp says they were all drunk except one of the young women. There is a general charge and confession throughout the case of the drunkenness of all except the one young woman, and she did not drink. When in front of a hotel at Le Sueur Center Zika was at the wheel and Repp, who was not in the auto, claims that he forbade him to drive farther. The others claim that he assented. It is evident that none of them were very clear in their plans. They had been drinking too much and were roistering around rather carefree and without much notion of where they would go. Finally all of them except plaintiff started for the country. Garvin was driving. Two miles out there was a head-on collision, resulting in an injury to the auto, and the accident was otherwise disastrous. The plaintiff seeks to recover for the injury to the auto under the theft policy.

The general rule is that to constitute a theft within an insurance policy such as that before us there must be present a criminal intent to deprive the owner of his property permanently. Robbery and pilferage are to be considered as used in their ordinary sense. Bloom v. Ohio Farmers Ins. Co. 255 Mass. 528, 152 N. E. 345; Stewart v. Home F. & M. Ins. Co. 2 N. J. Misc. 515, 124 A. 773; Gunn v. Globe & Rutgers F. Ins. Co. 24 Ga. App. 615, 101 S. E. 691; Royal Ins. Co. Inc. v. Jack, 113 Ohio St. 153, 148 N. E. 923, 46 A. L. R. 529; Miller v. Phoenix Assur. Co. 221 Ill. App. 75; 2 Berry, Auto-

mobiles (6 ed.) § 2234. The court charged the jury to the effect stated, and there was no exception. That was the theory upon which the case was tried, and it was satisfactory to both parties. It is to be noted that we are construing an insurance contract and not a statute. Our statute authorizing automobile insurance, in addition to general language which it uses, refers to "burglary and theft." Presumably the various so-called theft policies are used in different states which have slightly variant notions of what constitutes larceny.

Applying the rule upon which the case was tried, and without considering until it shall become necessary whether our definition of larceny, G. S. 1923 (2 Mason, 1927) § 10358, has a different meaning, or whether § 10373, which provides that an intention to restore property stolen is no defense, is of any consequence, the direction of judgment was right. The statute, 1 Mason, 1927, § 2717-1, which makes it a felony to drive or use a motor vehicle without the permission of the owner, seems not to be important in this connection. Van Vechten v. American Eagle F. Ins. Co. 239 N. Y. 303, 146 N. E. 432, 38 A. L. R. 1115; Valley Merc. Co. v. St. Paul F. & M. Ins. Co. 49 Mont. 430, 143 P. 559, L. R. A. 1915B, 327, Ann. Cas. 1916A, 1126; 2 Berry, Automobiles (6 ed.) § 2235, et seq.

The direction of judgment notwithstanding was right. All of the seven young people, except one young woman, were intoxicated. They were having a Sunday afternoon jaunt with no definite object. It was substantially a joint affair. It is impossible to find that there was an intent upon the part of any one of the party to steal the auto. Repp gave his consent at the beginning. He and the others were drunk when he claims that he withdrew his consent before the jaunt was ended. The court correctly viewed the situation when in its memorandum it stated as follows:

"It appears to the court without any question, and the record conclusively shows, that the plaintiff with his four companions started out on a common enterprise for their own amusement and that the trip ended in a drinking party. The plaintiff drove the car at times, as did Garvin and Zika, and at the time that the car was

damaged there was no intent or purpose on the part of plaintiff's companions to steal the car or to deprive the plaintiff of possession of it."

We think that the law cannot permit a jury to find from such evidence anything in the nature of theft, robbery or pilferage within the terms of the policy of insurance. Some of the young people engaged in the afternoon's party may have been guilty of offenses growing out of the liquor traffic, but there was no theft, robbery or pilferage.

Judgment affirmed.