LAIRD v. HOME INS. CO. OF NEW YORK.

No. 5425.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Dec. 3, 1937.

Ben E. Coleman, of Shreveport, for appellant.

J. Reuel Boone, of Many, for appellee.

DREW, Judge.

This is an action brought by the plaintiff, Clarence R. Laird, to recover under a policy of insurance issued by defendant, the Home Insurance Company of New York, covering plaintiff's automobile against theft, robbery, and pilferage, in a sum not to exceed the actual cash value at the time of the loss.

Plaintiff alleged in his original and supplemental petition that his car was stolen on May 2, 1936, at what is known as Brock's filling station at Clarence, Natchitoches parish, La.; by one Jack Wright, C. A. Hoagland being in the car with Jack Wright at the time, after plaintiff, C. A. Hoagland, and Jack Wright had driven to said service station in the car and while plaintiff was inside the service station. It is not alleged at what time the theft happened, but it was proved on trial that the time of its occurrence was near 2 o'clock a. m.

Defendant answered admitting that it had issued a policy of theft, robbery, and pilferage insurance on the car in question, but denying that there had been any loss sustained by theft within the meaning and terms of the policy or that Jack Wright had obtained the car with the intention of stealing and depriving the owner of it permanently. Defendant denied all the other allegations of plaintiff's petition, except it admitted that plaintiff had given defendant's adjuster a full statement in connection with the loss.

On these issues the case was tried below, resulting in a judgment in favor of plaintiff in the amount of $460, 25 per cent. additional on said amount as statutory damages, 5 per cent. per annum interest on the whole thereof from the date of judicial demand until paid, the further sum of $100 attorney's fees and all costs. From this judgment, defendant prosecutes this appeal.

The case to a great extent revolves around a sole question of fact, which is, Did the acts of Jack Wright in taking possession of plaintiff's car on the night in question constitute theft within the intendment of the policy of insurance?

There seems to be no dispute over the question of law involved, which was announced by this court in the case of Boddie v. Home Insurance Company, 166 So. 178, wherein we said:

"To constitute theft or larceny of personal property, in addition to the taking and carrying away without the owner's consent, there must be a felonious intent on the part of the taker to convert the property to his own use. There must be an intent to permanently deprive the owner of his property."

In that case we cited many authorities from different jurisdictions to support this doctrine.

The facts and circumstances surrounding the taking of the automobile by Wright and the deductions and conclusions logically and reasonably flowing therefrom convince us that there was no intention on the part of Wright to steal and permanently deprive plaintiff of his property. The most that can be charged against Wright, if anything could under the circumstances of this case, is that he took and used plaintiff's car without his consent, and the policy of insurance does not cover damages to the car under certain conditions. Boddie v. Home Insurance Company, supra; Phoenix Assurance Co. v. Eppstein, 73 Fla. 991, 75 So. 537, L.R.A.1917F, 540, and note thereunder.

The facts of this case are that at about 8:30 p. m. before the alleged theft about 2 a. m. following, plaintiff and a workman companion, named Hoagland, both employees of the Many Motor Company, left Many in plaintiff's car. They drove to Coldwater, arriving there at about 9 or 9:30 p. m., where they remained until midnight. Their time was spent at a roadhouse where there was dancing and where beer was sold. The most of the time between 9 and 12 o'clock while at Coldwater, plaintiff was talking with the sheriff of Natchitoches par-

ish and, according to plaintiff's testimony, while there he drank only three bottles of beer. At Coldwater plaintiff and his companion found Jack Wright, the alleged thief, who was an acquaintance if not a friend of both. Wright also lived in Many and had come to Coldwater that night with a boy friend and two young women. For some reason he stated he would not ride back to Many with his friend driving and, either by permission or invitation, left Coldwater in the car with plaintiff and Hoagland about midnight. It is admitted that Hoagland was at this time drunk and Wright was pretty "tight." The evidence is conflicting as to plaintiff's condition at that time; however, the preponderance of the testimony is that he was drinking but not drunk. Hoagland, who had spent the time at Coldwater on the inside of the resort with Wright and the girls or women who were there, invited the two young women who had come to this place with Wright to join them and go to a nearby roadhouse where there was dancing and where hard liquors could be purchased. The two women accepted and, after getting into the car, again got out and refused to go, giving as their reason that plaintiff insisted on driving and, in their opinion, he was too much under the influence of liquor to do so. The three men, with plaintiff driving, drove to Natchitoches. On the trip from Coldwater to Natchitoches, Wright says, and is not contradicted, that plaintiff and Hoagland were arguing over who should drive and more than once stopped the car to get out and fight, but on each occasion compromised their differences by taking a drink. They stopped at Natchitoches only a short time, due to the fact that practically everything in town was closed, and drove on to a night club or roadhouse, known as Crystal Club. They arrived there between 12:30 and 1 o'clock a. m. Plaintiff denies they stopped at Crystal Club, but claims they turned around there, drove back to Clarence and stopped at Brock's service station where beer and food are sold. Wright claims they stopped at the Crystal Club; that he and Hoagland danced and that all three of them took a drink of whisky at the bar; that they remained there until the proprietor put plaintiff out for boisterous conduct. They then went to Clarence, a distance of 300 yards, and stopped at Brock's service station. By this time Hoagland was sleepy drunk and did not get out of the car. Plaintiff went in and so did Wright, both ordering a bottle of beer. Wright returned to the car and got in, start-

ed it, and drove back to Crystal Club for the purpose, as he testified, of looking for Hoagland's new straw hat, he having left it there. Upon arriving at Crystal Club, he found it closed so he turned around and drove back by Brock's service station and continued at a fast rate of speed in the direction of Winnfield, some 24 miles away, in the search of some women. He contends he drove the car at the request of Hoagland and did not know whose car it was; that plaintiff's and Hoagland's cars were exactly alike, except in color and he was too "tight" to notice the color. Hoagland was in the car with Wright at the time, but claims he was asleep.

It is clear to us that Hoagland, in his intoxicated condition, was very much in the market for a female companion and plaintiff had no objection if more than one were located, and that Wright felt sure he could locate them. The fact that Wright drove Hoagland to the Crystal Club on departing in the car is strong corroboration of Wright's testimony that Hoagland had left his hat there, and also of the fact that the three of them had visited there before stopping at Clarence at Brock's service station. Another corroborating fact is the time of the arrival at Brock's service station and the alleged theft immediately thereafter, which was very near the hour of 2 a. m.

When the car was driven away from the service station, plaintiff saw it, rushed out and shouted to Wright to stop, and when it passed back by a few minutes later on its way to Winnfield, he again tried to stop the driver, without results. He then secured a car and attempted to overtake his own, without success. Plaintiff then returned to the service station and telephoned the sheriff at Winnfield and Natchitoches to stop the car and hold the driver. The sheriff at Winnfield, in company with the night marshal, soon thereafter discovered the car badly wrecked about 3 miles from Winnfield on the road leading to Brock's service station. It had struck a cow in the road leading to the station and turned over eleven times. The sheriff took charge of it and the occupants, carried them back to the service station and from there on to the sanitarium at Natchitoches, where they were treated for their injuries.

It is not contended by plaintiff that Hoagland stole the car or had anything to do with stealing it, and there has never been any charge of any kind filed against Wright, who is still living in Many. Plaintiff testi-

fied he made no charge upon the advice of his insurer.

Without further detailing the evidence, we find no difficulty in arriving at the following conclusions: That plaintiff was out that night on a spreeing party with his friend, Hoagland, and later was joined by Wright. He testified he left to go on a visit to his grandfather, but fails to explain why he did not go to see him. That his companion, Hoagland, was anxious for a female companion and Wright was the one he was relying on to find one for him. That Wright did not know to whom the car belonged and believed that Hoagland had as much to say about its use as plaintiff; and that the attempted trip to Winnfield was for the purpose of getting women and returning to where plaintiff had been left. There was certainly no intention to steal the car. It would be unreasonable to think that Wright would attempt to steal plaintiff's car with plaintiff looking at him and at a time when plaintiff's bosom friend was in it. What plaintiff might have thought in his half-intoxicated state at the time, as to whether the car was being stolen or not, has no bearing on the case. It is what was Wright's intention at the time he drove it away.

All the facts and circumstances connected with this night fail to show any intention to steal on the part of Wright. This is the only question to decide in the case and our conclusion is that plaintiff's case has failed.

The judgment of the lower court is reversed and plaintiff's demands rejected, at his costs.