## TOMS, d. b. a. HOMER TOMS MOTOR CAR CO., Appellee v. HARTFORD FIRE INSURANCE CO., Appellant.

Ohio Appeals, First District, Hamilton County.

No. 6473.  Decided February 5, 1945.

Mr. Bert H. Long, Cincinnati, and Mr. Milton M. Bloom, Cincinnati, for appellee.

Mr. August A. Rendigs, Cincinnati, and Mr. Elmer E. Strasser, Cincinnati, for appellant.

## OPINION

By ROSS, P. J.:

This review presents an appeal on questions of law from a judgment of the Municipal Court of Cincinnati, in favor of the plaintiff. The trial was to the court without a jury.

The action was brought by the plaintiff to recover damages for the breach of a contract of insurance which covered loss by theft and provided that the defendant insurer would defend any suit brought against the plaintiff "as respects insurance afforded by this endorsement."

The clause in the policy so providing is as follows:

"It is further agreed that the Company, as respects insurance afforded by this Endorsement, shall (a) defend in his name and behalf any suit against the Insured alleging loss of or damage to automobiles, the property of others, in the custody of the Insured for storage, repair or safekeeping and seeking damages on account thereof, even if such suit is

groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;"

The coverage provided in the policy is found in Paragraph I:

"The definition of Insurance Coverages appearing in the printed conditions of the Policy designated above are hereby expunged, and such Policy is extended to include coverage as follows:

1. COVERAGES AFFORDED. The Company agrees to pay within the limits stated in Paragraph 4, all sums which the Insured shall become obligated to pay by reason of liability imposed by law for direct loss of or damage including loss of use by theft, hereinafter called loss, to automobiles which are the propery of others and in the custody of the Insured for storage, repair or safekeeping, sustained under those coverages for which a specific premium is set opposite thereto:

COVERAGES

Premium

A. Fire and Explosion (except explosion of tires) $180.00

B. Theft, if the entire Automobile is taken. $INCLD.

x x x x x x x

3. EXCLUSIONS

This Policy does not apply to:

(a) Legal liability for loss of use of such automobiles other than loss of use by theft;"

It appears from the record that the plaintiff was engaged in the busineess of operating a public automobile garage; that among the vehicles placed with him for storage was one, the property of the Liberty Mutual Insurance Company; that on the 27th of February, 1944, at about 2:30, A. M., an employe of the plaintiff, by the name of Bourne, not then on duty, came to the garage, and while another employe of plaintiff, by the name of Hamlin, was on duty but engaged in taking care of an automobile, went to an upper floor of the garage, secured the automobile of the Liberty Mutual Insurance Company and drove it down to the street level, where he sought to load it with three men and two women, that Hamlin, the employe, objected, but was overawed by the presence of Bourne and the men with him, all of whom were in an

intoxicated condition; that while Hamlin was still protesting, Bourne drove the automobile out of the garage, across the Ohio River into Kentucky, where some hours later, it was wrecked in a collision with another automobile.

There is evidence that Bourne repeatedly stated that he only wished to borrow the car to take his friends to their home in Kentucky, and would bring it back before morning; but the evidence shows that Bourne and his friends proceeded to make a tour of the various drinking places across the river and that the wrecking of the automobile occurred about 4:30 A. M., while being driven by Bourne on the way to the home of his friends, after leaving a night club in a Kentucky town.

It is also evident that while Hamlin states that the men did not "threaten" him, that he did not feel competent to contend with them in their drunken condition, and that they used abusive language toward him when he sought to prevent Bourne taking the car. Hamlin learned of the damage to the automobile about 10:00 A. M., in the morning of the 27th of February, and passed on the information to his superiors, who then immediately notified the agent for defendant of the loss.

Claim was made upon plaintiff by the Liberty Mutual Insurance Company for the damage to its automobile.

The information was given the defendant who denied liability. Suit was filed by the Liberty Mutual Insurance Company against plaintiff and the defendant after being given due notice of the filing of such action refused to defend it.

Plaintiff employed counsel and defended the action. Judgment was rendered against plaintiff for $335.83. The costs were $5.07; and plaintiff incurred a reasonable attorney's bill of $100.00. The defendant having refused to pay such judgment, costs and attorney's fees, the instant action was instituted.

In the trial of the present action, the court permitted the introduction of the bill of particulars, separate findings of fact and law, the judgment, entry of satisfaction, and cost bill in the suit of the Liberty Mutual Insurance Company against the plaintiff.

In such Bill of Particulars it is stated:

"Plaintiff further says that it delivered the said automobile, together with several other automobiles, to said defendant to be safely kept and stored in said garage and to be redelivered to said plaintiff at its request under the terms of

a contract of bailment for a consideration of $36.00 per month, which was paid in advance by said plaintiff.

"Plaintiff further says that on February 27, 1944, the said automobile was damaged by and through the defendant's failure to take proper precautions to protect said automobile from the depredation of an employee of said defendant, while said automobile was in the custody and possession of the defendant under and by virtue of the contract aforesaid."

The defendant claims the policy of insurance upon which the instant action is predicated (1) did not require it to defend the action against plaintiff, (2) does not cover the loss he sustained.

Upon the first contention the case of **Socony-Vacuum Oil Co. v Continental Casualty Co., 144 Oh St, 382,** states the applicable law. The first, third, and fourth paragraphs of the syllabus are as follows:

"1. The duty of a liability insurance company under its policy to defend an action against its insured is determined from the plaintiff's petition, and when that pleading brings the action within the coverage of the policy of insurance, the insurer is required to make defense regardless of its ultimate liability to the insured.

"3. A liability insurance company breaches its contract to defend by making to the insured such a claim of nonliability for indemnification as to render it impossible for such company, in making defense, to protect both its own interests and those of the insured.

"4. When there is such a breach of contract, accompanied by an invitation to insured to employ its own counsel to participate in the defense for its own protection, the insured, protesting against such action, may employ counsel with notice to the insurance company that it must bear the expense, and the company will be liable for reasonable attorney fees and proper expenses incurred in making defense."

Referring to the quotation from the bill of particulars of the Liberty Mutual Insurance Company, it will be noted that the plaintiff in the action against this plaintiff stated "the said automobile was damaged by and through the defendant's failure to take proper precautions to protect said automobile from the **depredation** of an employe of said defendant, x x" (emphasis ours).

It is fortunate that the Supreme Court of the United States has approved a definition of this word depredation, in the case of Deal v United States, 274 U. S., 277, 283. The Court there say in the opinion:

"Difficulties of course arise from the words 'robbery' in section 291 and 'depredation upon' in section 940. Robbery accurately defined is 'the felonious and forcible taking from the person of another goods or money to any value by violence or putting in fear.' Bouvier's Law Dictionary. Jolly v United States, 170 U. S., 402, 404.

(3) Depredation is 'the act of plundering; a robbing; a pillaging.' Century Dictionary."

Certainly, the scope of this word "depredation" in the bill of particulars in the action against this plantiff was wide enough to include the word theft used in the policy of insurance.

The defendant, after notice of the action, refused to defend. In doing so, it breached its contract with the plaintiff, who is entitled to recover his damages reasonably attributable to such breach, which certainly include his costs and attorney's fees in the action. **American Liability Co. v Remke, Admr., 34 Oh Ap., 496.**

(4) The bill of particulars in an action against an insured is properly admitted in evidence in an action by such insured against his insurer for failure to defend the former action, when such bill of particulars shows by its language that the action against the insured is such as to be covered by the agreement to defend.

The trial court committed no error in admitting the bill of particulars in evidence, nor in admitting the judgment showing costs and the cost bill, in proof of the damage caused by the refusal to defend.

It does not, however, appear how the findings of fact and conclusions of law in the case against the insured would be competent or relevant in the instant action. It was only necessary for the plaintiff in the former action to prove negligence causing the loss of the automobile.

In the instant action, the plaintiff must show that such loss was due to theft as that word will be later herein defined.

- It may be presumed, however, that the court excluded such findings of fact and conclusions of law in its considera-

tion of the issues. Had the case been tried to a jury, the admission of the findings of fact and conclusions of law would have constituted prejudicial error.

Coming now to the second contention of the defendant—does the word "theft" include such circumstances as appear here?

The authorities are not in accord in construing the meaning of the word when found in contracts of insurance. Some hold the word synonymous with a technical definition of larceny, requiring an intent upon the part of the wrongdoer to permanently deprive the owner of possession. See: Kovero v Hudson Ins. Co. of New York, 192 Minn. 10; Seither v Pennsylvania Mfrs' Ass'n Cas. Ins. Co., 104 Pa. Super. 260; Morris Plan Co. of R. I. v Firemen's Fund Ins. Co. 49 R. I. 159; Hawkins v Agricultural Ins. Co., 190 A. 858, 862; Gulf & S. I. R. Co. v Sutter Motor Co., 12 La. App. 495; Boddie v Home Ins. Co., 166 So. 178, 179; Laird v Home Ins. Co. of New York, 177 So. 603, 604, 605; Standard Chevrolet Co. v Federal Hardware & Implement Mutuals, 178 So. 642, 644; Repp v American Farmers' Mut. Automobile Ins. Co., 179 Minn. 167; Fidelity & Guaranty Fire Corporation v Ratterman, 262 Ky. 350; Smart v State, 116 Tex. Cr. R. 639; Union Ins. Soc. of Canton v Robertson, 88 Colo. 590; Home Ins. Co. of New York v Trammell, 230 Ala. 278; Schenectady Varnish Co. v Automobile Ins. Co. of Hartford, Conn., 217 N. Y. S. 504; Schearer v Anderson, 13 F. (2d) 258, 259; Michigan Commercial Ins. Co. of Lansing v Wills, 57 Ind. App., 256.

**In Royal Ins. Co., Ltd. v Jack, 113 Oh·St., 153,** it is held that acquiring possession of an automobile through fraud does not constitute theft. While some language in the opinion would indicate the word "theft" should not be given an ultra technical meaning, on page 162 of the opinion, the court approves the case of Van Vechten v American Eagle Fire Ins. Co., 239 N. Y., 303, in which it was held that a temporary unlawful taking and use of an owner's automobile, returned in a damaged condition, although constituting larceny under New York criminal code, did not constitute "theft" under a policy insuring against "theft, robbery and pilferage." See, however, DeLong v Massachusetts Fire & Marine Ins. Co., 256 N. Y. S. 300, where this opinion is criticized and not followed.

(5)  On the other hand, there are many authorities which refuse to define the word "theft" as requiring an intent to permanently deprive the owner of possession. Employers Fire Ins. Co. v Bartee, 87 Colo. 147; James v Phoenix

Assurance Co., 75 Colo. 209; DeLong v Mass. Fire & Marine Ins. Co., 256 N. Y. S. 300.

In **Berry v State of Ohio**, 31 Oh St., 219, the second paragraph of the syllabus is:

"The wrongful taking and carrying away of the property of another, without his consent, with intent to conceal it until the owner offers a reward for its return, and for the purpose of obtaining the reward, is larceny."

At pages 226 and 227 of the opinion it is stated:

"In 2 East's Crown Law, 558, it is defined to be, 'the wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another, from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner.' Mr. Baron Parke, in commenting on this definition, held it incomplete in not defining the meaning of the term 'felonious,' and declared the taking must be, not only wrongful and fraudulent, but also 'without color of right,' and that 'there must be an intention to deprive the owner wholly of his property.' Regina v Holloway, 1 Den. C. C. 337."

"The contention of the plaintiff is, that the facts established at the trial did not bring the case within the rule thus stated, inasmuch as there was no intention to deprive the owner wholly or permanently of his property. In an exact sense, it is not true that an intent to appropriate permanently the property taken is a necessary ingredient in the crime of larceny, if by permanent appropriation is meant keeping the specific property from the possession of the owner."

In Pennsylvania Indemnity Fire Corporation v Aldridge, 117 Fed. (2d) 774, a decision by the Court of Appeals for the District of Columbia, facts constituting a much weaker case than here presented resulted in liability under a policy providing "for payment of loss from damage resulting from theft."

The sixth paragraph of the syllabus reads:

"Unauthorized use of automobile by boy employed by insured to wash automobile for which boy pleaded guilty of violating statute making unauthorized use of a motor vehicle

an offense, constituted a 'theft' within automobile theft policy, so as to entitle insured to recover for damages resulting when boy accidentally wrecked automobile."

This Court cites the Berry case at page 776 of the opinion, where it is stated:

"In a number of cases which purported to apply the common-law definition, persons were held guilty of larceny in spite of the fact that in each case it was not the intention of the taker permanently to deprive the owner of his property. In fact, the only rule as to felonious intent in larceny to which all the cases can be reconciled, is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken. It cannot be disputed that Harrison intended, in this case, to make use of the misappropriated car in a manner inconsistent with the property rights of appellee.

"In some jurisdictions several of the offenses listed above from the District of Columbia Code, are included within the statutory definition of larceny. In at least one state the word theft is defined as a crime which includes larceny, embezzlement, stealing, or obtaining money, labor, real or personal property, or credit by false pretense or representation. The Quebec Criminal Code defines theft or stealing as follows: 'Theft or stealing is the act of fraudulently and without colour of right taking, or fraudulently and without colour of right converting to the use of any person, anything capable of being stolen with intent: (a) to deprive the owner, or any person having any special property or interest thereon, temporarily or absolutely of such thing or of such property or interest.' The Quebec Court of Review, interpreting this section, held that a theft occurred under circumstances almost completely parallel with those of the present case."

The Berry case is cited with approval in **State v Baxter, 89 Oh St., 269,** at page 284.

In **Great American Mutual Indemnity Co. v Meyer, 18 Oh Ap., 97,** the syllabus is as follows:

"1. The word theft is a broader term than larceny and may include not only an unlawful taking of property but other unlawful deprivations thereof.

"2. Where an insurance policy purports to indemnify an automobile owner against loss by theft, and contains a clause excepting the insurer from liability in case the property is wrongfully converted by a mortgagor or vendee in possession, the insurer is liable for the embezzlement of an insured automobile by one who is not a mortgagor or vendee in possession.

"3. When the bailee of an automobile fails to deliver it at a designated place, and neither the bailee nor automobile is ever seen or heard of again by the owner after diligent search, a jury is warranted in the inference that the automobile has been embezzled."

This last case, while referring to embezzlement, was one in which the owner was permanently deprived of possession.

It does not need citation of authority to sustain the proposition that the policy is given a reasonable construction, most favorable to the insured.

(7) Although the employe Hamlin constantly claimed he was not threatened by Bourne and his friends, it is evident from reading the record that he did in no way consent to the taking of the automobile. It is also obvious that although Bourne told Hamlin and testified that he intended to bring the automobile back that he took it, wrongfully in flagrant violation of the rights of the owner and bailee, and with utter disregard of the consequences, which, considering his condition, were to be easily anticipated. Whether he would have returned it is a matter of conjecture only influenced by his own statements. He committed crimes under the Ohio Code and in crossing the state line violated the Federal statute. Certainly, such unlawful taking of the property in the custody of the bailee is within the scope of the word "theft" giving it an ordinarily reasonable interpretation, which the parties to the contract contemplated.

It seems reasonable to conclude that the parties to the contract of insurance contemplated by the use of the word "theft" not merely a technical felonious taking including a questionable requirement that the wrongdoer intended to permanently deprive the owner of possession, but, on the contrary, any taking in violation of the criminal code in which the owner or custodian of the automobile did not part with its custody voluntarily, or even through fraud. Where the taking is wrongful, in violation of a specific act of the legislature, making such taking a felony and over the vigorous

protest of the owner or bailee, it is reasonable to infer that the parties intended that such a taking should be included in the coverage against theft. It is to be noted that in §12,619 GC, that the statute is in the alternative—"whoever steals any motor vehicle or whoever purposely takes, drives or operates any motor vehicle without the consent of the owner," etc. (Emphasis ours.) Stealing and wrongful taking without the consent of the owner are placed upon an equal basis.

There was sufficient evidence introduced to sustain the amount of damages ascertained by the court arising by reason of the breach of the contract of insurance, and the judgment of the trial court is, therefore affirmed.

HILDEBRANT & MATTHEWS, J. J., concur in separate memorandum.

MATTHEWS, J., concurring.

I concur in paragraphs one, two, three, and four of the syllabus, and in the judgment.

The trial Court found that there was a theft of the automobile and a reading of the record convinces me that there is substantial evidence in support of that finding, even though the term be given the common law definition. That makes it unnecessary to determine whether a loss resulting from a taking not coming within that definition was covered by the policy.

HILDEBRANT, J., concurring.

I concur in paragraphs one, two, three, and four of the syllabus, and in the judgment.

To find no theft here requires that there be attributed to the wrongdoer a constant bona fides attached to his statement of intention to take the car only for the purpose of taking his companions home, and then to return it. Within a very few minutes he acted contrary to, and in violation of that expressed intention. These actions on his part would seem to speak louder than words, stripping his remarks and conduct of their bona fides and justifying the conclusion that he had given expression only to a pretended purpose in order to more easily obtain the wrongful possession and consummate the taking away. Such actions would seem to fit within the common law definition of `larceny or theft and to justify the finding of the court below which should, therefore, be affirmed.