Robert J. Trainor, J.
This action was brought by Gerald Gordon, the receiver in supplementary proceedings for a judgment debtor, one Louis Porter, against the defendant as the insurer of said Louis Porter under a policy of automobile liability insurance issued by it to Porter upon which said defendant disclaimed liability, after an accident in which Porter was involved, upon the ground that the policy had previously been canceled for nonpayment of premium. After said disclaimer it was decided by a Justice of this court that the attempted cancellation of the policy was ineffective and therefore the policy was in full force and effect on the date that the insured, Louis Porter, was involved in a two-car collision which resulted in the deaths- of two persons and the serious injury to a third passenger in the other car.
Before deciding that the policy had been canceled and was not in effect on the date of the accident, the defendant, by its house counsel, had interposed an answer in behalf of Porter in an action commenced against him arising out of said accident, and said attorneys had also demanded a bill of particulars and served a notice to examine the adverse parties before trial. The policy was a “limited” one of $20,000 covering all injuries. During the pendency of the action and before the disclaimer by defendant, which did not occur until a year later, the claimants’ attorney had on more than one occasion, offered to settle all of the claims against Porter for the amount of the policy, i.e., $20,000, but the defendant refused and, with the court’s permission, the defendant withdrew its counsel as Porter’s attorney. Subsequently, after a Justice of this court had decided that the policy was in effect at the time of the accident, defendant paid the sum of $13,333.33 to two of the original claimants. The defendant’s attorneys, and the defendant, both notified Porter that he should get himself new counsel. Porter failed *691 to do so and an inquest was taken against him for his default which resulted in judgments being entered against him in a total sum of $214,462:50 and, giving effect to the sum since paid by the defendant of $13,333.33, there is a balance unpaid on said judgments amounting to $201,129.17.
The plaintiff herein now sued the defendant on two causes of action. In the first he alleges that the defendant was grossly negligent and acted in bad faith in not settling the actions against Porter for the sum of $20,000 and in permitting the default judgments to be entered. In the second, he charges defendant with a breach of contract for failing to defend Porter pursuant to the express terms of its contract and claims that such breach resulted in the judgments aforesaid. At the trial the plaintiff also demanded punitive damages for what he alleged to be defendant’s bad faith and which, he said, was tantamount to willfulness, wantonness and criminal recklessness, in abandoning its assured to his fate.
The jury returned a verdict of $201,129.17, plus interest as compensatory damages, and the sum of $300,000 as punitive damages against the defendant.
The defendant has moved to set aside the verdict and for judgment in its favor, pursuant to CPLR 4404 (subd. [a]).
I see no reason to disturb the verdict insofar as it awards compensatory damages in the sum of $201,129.17, which is equal to the balance due upon the judgments entered against Porter, with interest from the dates of their entry. The evidence is clear and convincing and without dispute, that the defendant breached an express provision of its policy when it failed to defend Porter in the suits brought against him. Equally clear and convincing is the proof that the defendant could have settled all such claims against Porter by paying the face amount of the policy, to wit, the sum of $20,000 and, by so doing it would have protected Porter against the liens of the judgments entered against him. One issue therefore is, what is the measure of compensatory damages? It is pertinent here to notice Henegan v. Merchants Mut. Ins. Co. (31 A D 2d 12 [1968]). In that case the insurance company failed to settle a claim against its insured and the result was the entry of an excess judgment against him. The insured sued the insurance company to recover the excess alleging that he was damaged to that extent by the bad faith and/or fraud of the company in refusing to settle. The insurance company resisted on the ground that unless the insured pays the excess judgment he has not proved damage. After stating the facts as aforesaid the court said:
*692 “ This question has not been passed on by the courts of this State, although some 40 years ago the Court of Appeals ruled that an insurance company ‘ in the handling of the litigation or in failing to settle is liable for its fraud or bad faith ’ (Best Bldg. Co. v. Employers’ Liab. Assur. Corp., 247 N. Y. 451, 453). -y- .,f. -y. *JP IF TF
“ We join with the majority of jurisdictions in this country in concluding that an insured is damaged, that he has suffered a loss or injury, upon entry of the excess final judgment in the damage suit case. Season as well as economic fact dictates that the mere existence of an excess final judgment causes harm to the judgment debtor. The judgment increases his debts, it damages his credit, it subjects his property to the lien of the ubiquitous judgment. An insurer which has been guilty of bad faith, one which has deliberately shackled its insured with the crippling jeopardy of a large excess judgment, may not insist that the insured must sacrifice his assets and pay the judgment before suit. The very nature of the risk insured against prohibits the imposition of such prerequisite, [citing Cjases], * * *
‘ ‘ Finally, we observe that while the cause of action with which we are concerned is one for excess liability as distinguished from one for an amount within the policy limits, we view each as sounding in contract and complete the moment judgment was entered. As to the latter, under the plaintiffs’ liability policy the insurer expressly bound itself ‘ To pay on behalf of the assured all sums which the assured becomes legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom.’ As to the former, the instant action for breach of the implied covenant of good faith in the handling of the litigation and in the settlement of the action, damage and loss was sustained and the cause of action accrued upon entry of the excess judgment against the plaintiffs. Actual payment of the excess of the judgment rendered against the insured is not a condition precedent to suit ” (pp. 13-15).
In view of the foregoing it is my judgment that the defendant herein failed to introduce any proof to overcome the presumption that Porter had been damaged by the mere entry of the judgments against him and to the extent thereof. Nor did the defendant attempt to show that Porter was insolvent at the time and thus sustained no damage (see Young v. American Cas. Co. of Reading, Pa., 416 F. 2d 906 [2 Cir., 1969]; Brockstein v. Nationwide, 417 F. 2d 703 [2d Cir., 1969]).
*693 With respect to the verdict for punitive damages the issue is much more troublesome.
A most exhaustive review of the law of punitive damages was given by Judge Friendly in the case of Roginsky v. Richardson-Merrell, Inc. (378 F. 2d 832, 838 [1967]), where he said in part: “ The remedy [punitive damages] has a long history. Its first articulation in England came in a case of illegal entry. The jury was held justified in going beyond ‘ the small injury done to the plaintiff ’ because of the desirability of taking account of ‘ a most daring public attack made upon the liberty of a subject ’ through entry and imprisonment pursuant to 1 a nameless warrant ’ [citing cases]. Later decisions reflect a variety of rationales: * * * There is no doubt, however, that the remedy has been extended to cases where, although the defendant did not intend to harm the plaintiff, he showed 1 such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton ’ Prosser, Torts § 2 at 10 (1964).”
In New York State, practically all of the cases wherein punitive damages have been awarded involve actions ex delicto based on tortious acts involving ingredients of malice, fraud, oppression, insult, wanton or reckless disregard of plaintiff’s rights, or other circumstances of aggravation such as assault and battery, defamation, false imprisonment, malicious prosecution, trespass, etc.
Exemplary damages are penal in nature and are designed to punish the defendant and to deter him and others from further and similar acts and as a protection to the public. They are only allowed where the wrong results from evil motives of the defendant and to punish and make an example of such conduct. It must, however, appear that there was actual malice or such wantonness or recklessness as to imply or permit an inference of such malice. Unless a wrongful motive exists or there was intentional wrongdoing or a reckless indifference tantamount thereto, there is no basis for such award. The purpose of punitive damages is to protect the public and not to benefit the plaintiff. A jury may not award punitive damages in a negligence action for mere culpable negligence but may only do so where there is intential injury or conduct so flagrant as to transcend mere carelessness and constitute gross negligence. Punitive damages are rarely awarded in a breach of contract case. (14 N. Y. Jur., Damages, § 176 et seq.)
I. H. P. Corp. v. 210 Cent. Park South Corp. (16 A D 2d 461, 467) was an action for an injunction to restrain unlawful *694 interference by the defendant. An award of punitive damages was sustained but the court said: “ There is no rigid formula by which the amount of punitive damages is fixed, although they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it ”.
In Fittipaldi v. Legassie (18 A D 2d 331, 335), the plaintiff was wrongfully expelled from a union and punitive damages were allowed. The court said: “ They [punitive damages] are highly penal.”
In Costich v. City of Rochester (68 App. Div. 623, 626) the court said: ‘ ‘ The degree of misconduct necessary to warrant and uphold the allowance of them [punitive damages] has been defined by different courts in varying language. All of these definitions, however, so far as they are worthy to be followed, involve the ideas of intentional, wanton, wilful or malicious commission of some illegal act or of such a perverse or obstinate failure to discharge some duty as warrants the presumption of a reckless indifference to the rights of others which is equivalent to intentional misconduct.”
In Cleghorn v. New York Cent. & H. R. R. R. Co. (56 N. Y. 44, 47-48) a passenger sued the railroad company to recover for injuries caused by a switchman’s carelessness in neglecting to close a switch and in signalling an approaching train that the track was clear. Proof was also offered that the switchman was a person of intemperate habits and defendant’s stationmaster knew it. The jury awarded punitive damages on the Judge’s charge that they had a right to do so. In reversing, on the Judge’s charge, the Court of Appeals stated: “It is the exception and not the rule that, in this class of cases, exemplary damages are allowable. * * * For the purposes of this case, the following rule may be laid down as fairly deducible from the authorities, viz., for injuries by the negligence of a servant while engaged in the business of the master, within the scope of his employment, the latter is liable for compensatory damages; but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. Such misconduct may be established by showing that the act of the servant was authorized or ratified * * * Something more than ordinary negligence is requisite; it must be reckless and of a criminal nature, and clearly established. Corporations may incur this liability as well as private persons. (47 N. Y., 282.) ”
De Marasse v. Wolf (140 N. Y. S. 2d 235) was an action for malicious prosecution. The defendants had caused the plaintiff to be indicted and tried for the crimes of forgery and petty *695 larceny of which crimes the plaintiff was acquitted. In the interim the plaintiff had been arrested, confined in Tombs prison, photographed, fingerprinted and subjected to other indignities. A jury awarded the plaintiff $3,500 compensatory damages and $2,000 punitive damages. In setting aside the award of punitive damages the court said (p. 238):
“ The law takes notice of the frailties of human nature and distinguishes between a deliberate act and an act done without malice aforethought. * * * when a party has only done what he honestly believed to be his duty, punishment is not deserved, and there is no occasion for punitive damages.” See, also, Lamb v. Cheney & Son (227 N. Y. 418, 422): “ The act is malicious when the thing done is with the knowledge of plaintiff’s rights and with the intent to interfere therewith. In a legal sense it means a wrongful act, done intentionally, without just cause or excuse.”
In Hamilton v. Third Ave. R. R. Co. (53 N. Y. 25, 30) a passenger had been forcibly, but wrongfully, ejected from a street car. In reversing an award of punitive damages the Court of Appeals said: ‘‘ But when there has been no intentional offense committed, when a party has only done what he honestly believed to be his duty, punishment is not deserved. ’ ’
Thus the New York rule with respect to punitive damages is as follows: The character of conduct is such as spells out— “Intention to injure, or that reckless disregard of the safety of person or property which is equally culpable” (Wallace v. Mayor of City of New York, 2 Hilt. 440, 452 Ann. 98 A. L. R. 267).
Even in those cases where punitive damages have been awarded, the appellate courts have not hesitated to reduce the amount. (See Toomey v. Farley, 2 N Y 2d 71 [1956], reduced from $10,000 to $5,000 and from $7,500 to $5,000; Faulk v. Aware, Inc., 19 A D 2d 464 [1963], reduced from $2,500,000 to $150,000 affd. 14 N Y 2d 899; Kern v. News Syndicate Co., 20 A D 2d 528 [1963], reduced to $50,000; Mc Mahon v. New York News Pub. Co., 51 App. Div. 488 [1900], reduced from $16,500 to $7,500; Manekas v. Allied Discount Co., 6 Misc 2d 1079 [1957], and many others.)
The general tenor of all of the cases where punitive damages were awarded is that the conduct complained of was so wanton and malicious as to be tantamount to criminality. I do not find such conduct in this case. I feel that the defendant and their attorneys, in good faith, made an error of judgment based upon an honest belief that the policy of insurance had been validly canceled. By notifying the insured in two separate letters to retain another lawyer, and by serving said insured, not only with *696 their petition to the court to be relieved as attorneys, but also with the claimants’ application to assess damages on the insured’s default, I believe the defendant and its attorneys were doing no more than what they conceived to be their duty. Also, if an example is to be made of defendant’s conduct and punishment meted out, what is a better example and more punishment than to require the defendant to pay out almost a quarter of a million dollars on a policy with a face value of only $20,000?
Therefore, the motion is granted insofar as it seeks to vacate the verdict with respect to punitive damages, and in all other respects denied.