Harry T. Nusbaum, J.
The question posed in this action is whether a loss suffered by the plaintiff is covered under the terms of the policy of insurance issued to it by the defendant.
The plaintiff is a corporation specializing in the hauling and storage of theatrical properties. In connection with the operation of its business, it purchased a policy of insurance from the defendant, which covered it for liability as a carrier, bailee, or warehouseman for loss or damage caused by specified perils to shipments of goods while in transit on its vehicles. The specific clause in question which requires interpretation reads as follows: “ 1. This policy covers the assured’s liability as a carrier, bailee or warehouseman for loss or damage directly caused by perils hereinafter specified to shipments of lawful goods consisting principally of theatrical and television equipment while such goods are in due course of transit in or on vehicles owned, hired, leased, operated or used by the Assured within the 48 contiguous states of the United States, the District of Columbia and Canada.”
The precise words to be interpreted are “in or on vehicles owned, hired, leased, operated or used by the Assured ’ ’.
The second clause of the policy rider sets forth the perils covered, and among these is found the following: “ (h) Theft, burglary and hold-up, including pilferage ”.
The rather bizarre facts which led to the assertion of the claim and the denial of liability are these:
On March 29, 1968, the plaintiff’s employees loaded a caster box measuring 4 feet by 4 feet by 4 feet on one of its trucks for delivery to a client’s studio where a new play was being rehearsed. Unbeknownst to the driver, while en route to the studio, the box fell off the truck. A passerby who apparently saw the incident and saw the plaintiff’s name on the truck telephoned and advised the plaintiff of the occurrence. The information was relayed to the studio where the delivery was to be made, and the driver, when he arrived, was immediately dispatched to recover it. Upon his arrival at the scene, he found the box but, unfortunately, almost all of the merchandise that had been packed in the box had disappeared. The only clear inference to be drawn is that the box was opened and looted by a person or persons unknown between the time it fell off the truck and the time the driver returned for it.
The shipper’s customer, David Merrick Productions, supplied a list of the missing items to the shipper, who replaced them at *297 a cost to it of $1,456.90. The defendant insurance carrier disclaimed liability on the ground that there was no theft or pilferage of the goods while such goods were “in or on the plaintiff’s vehicle ”.
I reject the disclaimer as being contrary to the law and the evidence.
A reading of the policy discloses that it was the intent of the parties to provide the assured with unusual and broad coverage for all losses to customers’ merchandise and equipment being shipped, carried, or stored by it. It included, in addition to the usual losses resulting from fire, theft, burglary, pilferage, hold-up, and accidental collision, losses resulting from acts of God (lightning, cyclone, tornado, windstorm, and floods), losses from perils of the seas or navigable waters, losses due to strikes, civil commotion, riots, vandalism, and malicious mischief
Excluded from coverage were items such as money, securities, or jewelry and losses due to theft or pilferage by persons in the assured’s employ, losses due to hostile or warlike action, nuclear explosion, and radioactive contamination, except that indirect loss by fire resulting from nuclear reaction was insured against.
Nevertheless, despite the broad and comprehensive coverage purchased by the assured, the defendant carrier seeks to avoid payment of this claim because the loss did not occur precisely within the strict and literal meaning of the clause of the policy first above quoted.
Admitting as it must that the loss occurred while the merchandise was “in transit” and admitting albeit reluctantly, that there was an inference that the loss resulted from theft or pilferage, the defendant insists that the loss did not occur while the merchandise was “ in due course of transit in or on vehicles ” owned by the assured.
True, having fallen off the truck at the moment the theft or pilferage took place, the goods when stolen were not in or on the assured’s truck. However, it is this court’s opinion that the allowance of this specious disclaimer would be contrary to the spirit and intent of the contract entered into between the parties.
Research has failed to disclose any New York precedents ruling upon or interpreting the words “in or on vehicles ” owned by the assured. Although many decisions have been written interpreting the term “ in transit ”, and there is no doubt that the goods being shipped were in transit when the loss occurred, the precise language of this clause, at least as far as the court has been able to discover, has not been interpreted. Once the transportation of goods has begun, the mere fact that there has *298 been an interruption in delivery would not defeat coverage under the policy, and our courts have repeatedly held that such goods are “in transit ”. (Franklin v. Washington Gen. Ins. Corp., 62 Misc 2d 695, affd. 36 A D 2d 688; Underwood v. Globe Ind. Co., 245 N. Y. 111.)
In an Alabama case, Chemstrand Corp. v. Maryland Cas. Co. (266 Ala. 626), facts were present which closely parallel the facts in the case at bar. In that case, household goods and cartons were placed on the tailgate of a van coveréd with a tarpaulin and secured to the van with ropes. While en route, an iron ring on the right side of the tailgate broke, and some of the merchandise being carried fell off the van. The loss was not noticed until some time later, and, when the driver returned to the scene, he found two empty barrels, and most of the goods were gone. In language which is quite significant and which I believe should be applied to the facts in the case at bar, the court there stated: ‘1 The removal of the goods from the highway was the proximate cause of their loss. Recovery is allowed where an insured risk is the last step in the chain of causation set in motion by an uninsured peril ’ ’.
In the case at bar, loss of the goods was caused by their removal, pilferage, or theft from the highway. The merchandise was in transit at the time this happened, and although the causation of the loss was set in motion by an uninsured peril (the falling of the merchandise from the truck), I am of the opinion that this loss is covered under the terms of the policy. It is immaterial whether the theft took place while the merchandise was actually “ in or on ” the plaintiff’s vehicle. The theft did take place while the merchandise was in transit, as was contemplated by the parties under the terms of the policy.
It is evident to me, from the policy as a whole, that there was no intent to except from liability an incident such as occurred in this case but, rather, to designate and to restrict the liability of the defendant for losses which occurred while merchandise was being shipped under the supervision and control of the plaintiff, and not to cover the plaintiff for losses which occurred while merchandise was being shipped by it through or under the auspices of other agencies.
In the case of Greaves v. Public Serv. Mut. Ins. Co. (4 A D 2d 609, 611, affd. 5 N Y 2d 120) the court stated: “ In attempting to ascertain the actual intent of the parties, the definition must be read in the light of, and as qualified by the language employed in the exclusion clause. If there is resultant ambiguity, it should be resolved against the company inasmuch as it *299 wrote the policy (Broadway Realty Co. v. Lawyers Tit. Ins. & Trust Co., 226 N. Y. 335, 337; Killian v. Metropolitan Life Ins. Co., 251 N. Y. 44, 47; Howell v. John Hancock Mut. Life Ins. Co., 286 N. Y. 179, 185).”
In the case at bar, there is no language in the exclusion clauses which would qualify the definition of the coverage as set forth in the policy or would bar recovery for the loss here claimed.
The policy in question is essentially an “ all risk ” policy intended to cover the assured for all losses to customers’ merchandise which might occur while it was being stored or shipped under the assured’s supervision and control, except such losses which might be due to the theft or pilferage by the assured’s own employees.
This being the real intent of the parties, I find that the loss, which occurred while the merchandise was in transit under the supervision and control of the assured’s employees, is covered under the terms of the policy.
The testimony adduced as to the value of the merchandise lost was somewhat less than adequate; however, based upon the replacement value of the merchandise, the testimony as to its age and condition at the time of loss, and the kind of merchandise involved (furniture covers, scenery covers, groundcloth, and traveling bags), I fix the plaintiff’s damages in the sum of $1,000 and direct that it be awarded judgment in that amount plus interest from March 29, 1968.